In the Matter of the Application to Construe the Last Will and Testament of CHARLES FREDERICK FOWLES, Late of the County of New York, Deceased.

COLUMBIA TRUST COMPANY and STEVENSON SCOTT, as Trustees, and Others, Appellants; DOROTHY ELIZABETH SMITH and Another, Respondents.

First Department, March 9, 1917.

Will — gift to wife with power of appointment — death of testator and wife in common disaster without proof as to survivorship — presumption that wife died before husband — when appointment in wife's will ineffective — provision in husband's will that wife shall be deemed to have survived him — said provision ineffective to destroy legal presumption — intent of testator — construction not involving intestacy — evidence — burden of proof as to survivorship when persons perish in common disaster — conflict of laws — devise of foreign real estate — when legacy falls into residuary estate.

Where a testator devised a portion of the income of a trust fund to his wife for life and gave her the power to dispose of one-half of the corpus of said trust by will, with a proviso that if the wife did not exercise the power said property should be paid into other trusts created for the testator's daughters, and the wife, pursuant to said power, executed a will in which she left the property in trust to her own sister for life with remainders to the descendants of said sister and to her own next of kin, the wife's will was ineffective to dispose of her husband's property where both of them died at sea in a common disaster and there is no evidence whatever as to which of them died first.

Moreover, a provision in the husband's will stating that should he and his wife die simultaneously, or under circumstances which would make it impossible or difficult to determine which predeceased the other, it shall be deemed that the testator predeceased his wife and the provisions of the will shall be construed on that assumption, was ineffective to annul the provision of the substantive law that there is no presumption of survivorship, and is not binding upon the court on the question of survivorship.

It was error for the surrogate to determine that in any event the testator's provision as to the presumption of his wife's survivorship indicated an intention on his part that the property over which she had a power of appointment should go to her executor to be disposed of in accordance with the terms of her will, for there was nothing whatever in the husband's will which indicated any intention whatever that the property should go to his wife's relatives or to her executor if she failed to exercise a valid power of appointment, but on the contrary his intention

was clear that it should go to his own daughters in the absence of an exercise of said power.

Moreover, the rule of construction which avoids a lapse or partial intestacy cannot be invoked to cast the property upon the relatives of the wife, for the testator expressly provided against intestacy by leaving the property to his own daughters if the wife failed to exercise the power.

The daughters of the testator in order to be entitled to said trust fund under his will were not under the burden of showing that their mother predeceased their father.

The validity of a devise of real estate situated in England is governed by the law of England.

Specific legacies which the testator made to his wife by other clauses of his will became part of his residuary estate by operation of law in default of proof that the wife survived the testator in the common disaster.

PAGE, J., dissented, with opinion.

APPEAL by Columbia Trust Company and another, as trustees, and others, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 16th day of June, 1916, construing the will herein.

*George L. Ingraham,* for appellants Browne and another.

*Charles H. Beckett,* for appellant Columbia Trust Company, trustee.

*James W. Prendergast,* for appellant Scott, trustee.

*A. Perry Osborn,* special guardian for the infant appellants Marjorie F. S. Browne and others.

*Selden Bacon,* for the respondent Dorothy E. Smith.

*Egerton L. Winthrop, Jr.,* special guardian for the infant respondent Kenneth C. Smith.

SHEARN, J.:

The decree appealed from was made by the Surrogate's Court, construing the will of Charles Frederick Fowles, deceased, in a proceeding under section 2615 of the Code of Civil Procedure. The decree so far as appealed from relates solely to the disposition of (1) a legacy of $5,000 and of certain personal property, and (2) one-half of a trust fund comprising forty-five per cent of the residuary estate. The appellants Gertrude Frances

Browne and Gladys Mary Baylies are the testator's daughters. Their mother died during the lifetime of the testator and he married again, his second wife being Frances May Fowles. There were no children of such second marriage. The testator and the second wife died in a common disaster when the *Lusitania* was sunk on May 7, 1915, both leaving wills dated April 30, 1915. The testator's will contained, among other provisions, a general legacy of $5,000 to his wife, and also contained a direction to his executors to divide his residuary estate into three parts, the first of which should consist of forty-five per cent thereof, and the other two parts of which should each consist of twenty-seven and one-half per cent thereof. It directed his executors to pay over to certain trustees named in the will the forty-five per cent of the residuary estate as a trust fund, the income of which should go to the testator's wife during her life, and it in terms conferred upon her a power to dispose by her will of one-half of the corpus of such trust. The will contained an alternative provision that in the event that the testator's wife did not exercise the power, the portion of the trust fund to which the power related should be divided into two equal parts, which should be respectively paid into two other trust funds which the will created for the benefit respectively of his two daughters during their lives, and which upon their death should go to their children. The will further provided that the second and third parts of the residuary estate, each consisting of twenty-seven and one-half per cent, should be paid over to said trustees in two separate trusts respectively; one trust for the benefit of one of his two said daughters, Gertrude Frances Browne, to receive the income during her life, the principal on her death to go to her children; the other trust for the benefit of his other daughter, Gladys Mary Baylies, to receive the income during her life, the principal on her death to go to her children. The terms conferring upon the wife the power to dispose by her will of one-half of the corpus of her trust estate, together with the alternative provision in the event that the power was not exercised, are as follows:

" Upon the death of my said wife, the said trust shall cease and determine and the corpus of same I direct my said trustees to then dispose of as follows:

First Department, March, 1917.　　　　　[Vol. 176.

" One-half thereof to pay over pursuant to the provisions of such last Will and Testament as my said wife may leave (hereby conferring upon my said wife the power to dispose of the said one-half by last Will and Testament duly executed by her), and in the event that my said wife should fail to make testamentary disposition of the said one-half thereof, the same to divide into two equal portions and such two equal portions to pay over pursuant to the provisions of subdivisions ' B ' and ' C ' of this article of this my Will, one such portion passing under said subdivision ' B ' and one such portion passing under said subdivision ' C '."

The provisions "B" and "C" referred to are those providing for the payment of the second and third parts of the residuary estate, each consisting of twenty-seven and one-half per cent, to trustees for the benefit of the testator's two daughters. By paragraph ninth the testator attempted to create a presumption to be binding upon the court in the event of his death and that of his wife under such circumstances that it should be difficult or impossible to determine which died first. This paragraph reads as follows:

" *Ninth.* In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my will that it shall be deemed that I shall have predeceased my said wife, and that this my Will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife."

The will of the testator's wife, Frances May Fowles, contained a provision by which the testatrix attempted to exercise the power conferred upon her by her husband's will in part as follows: " Any and all the rest, residue and remainder of my estate, real and personal and wheresoever situate (including any and all property as to which I may have power of disposition by will by virtue of the provisions of the last Will and Testament of my husband, Charles Frederick Fowles), I give and bequeath to my Trustees, hereinafter named, In Trust, Nevertheless, to hold and invest the same for the use and benefit of my sister, Dorothy Elizabeth Smith," to receive and pay over the income to said Dorothy Elizabeth Smith during

her life, and upon the death of Dorothy Elizabeth Smith to pay over the corpus of the trust, one-third to the son of Dorothy Elizabeth Smith or to his issue, one-third to Gertrude Frances Browne, the daughter of the husband of the testatrix, or to her issue, and one-third to the other daughter, Gladys Mary Baylies, or to her issue.

Both wills were duly admitted to probate in New York county. It is conceded that no facts have come to light from which any inference can be drawn as to whether Mr. and Mrs. Fowles perished at the same moment or one predeceased the other, or as to the sequence of their deaths. The learned surrogate (95 Misc. Rep. 48) consequently, following the established rule in this State, correctly held that there was no presumption that Mrs. Fowles survived her husband; also that as the power did not come into being until the death of Mr. Fowles, and could not be exercised until it did so come into being, and as the will of Mrs. Fowles could not be effective as an exercise of the power given by her husband's will unless she did survive him, it followed that her will did not constitute an exercise of that power. The surrogate also correctly held that under well-settled principles of law and from considerations of public policy, the ninth paragraph of Mr. Fowles' will could not be given effect, either as an attempt to change the substantive law applicable in the event of the simultaneous deaths of the testator and his wife, or as an attempt to create a presumption to bind the court in the absence of evidence as to which of the two died first, and that notwithstanding paragraph ninth the rule of law as to the effect of simultaneous deaths and the rule as to the presumption, in the absence of evidence as to priority of death, was the same as if paragraph ninth had not been contained in the will. Notwithstanding these rulings, the learned surrogate held that paragraph ninth of the will of Mr. Fowles, in order to prevent an assumed lapse and to carry out what the surrogate considered to be the intent of the testator, should be given effect as a "substitutional" provision, and should be construed as though it had provided that in the event of the simultaneous deaths of Mr. and Mrs. Fowles, or in the event of their deaths under such circumstances that the respective priority of their deaths

could not be ascertained, the $5,000 legacy and the beneficial interest under the forty-five per cent trust should go *to the executor named in Mrs. Fowles' will,* to be disposed of in accordance with the terms of her will. Accordingly, it was

" Ordered, adjudged and decreed that the provisions of the subdivision designated 'Ninth' of the last Will and Testament of Charles Frederick Fowles, the above-named decedent, are valid and that the true and full meaning, construction, force and effect of the said provisions are that the legacies bequeathed by the decedent to his wife, Frances May Fowles, deceased, passed by substitution to Stevenson Scott, the executor of the last Will and Testament of the said Frances May Fowles, deceased, for the use and purposes prescribed in and by the will of the said Frances May Fowles, deceased, and that the legacies which passed as aforesaid by virtue of the will of the said Charles Frederick Fowles, deceased, are as follows: The sum of $5,000 bequeathed by the subdivision thereof designated 'Second;' the personal property bequeathed by the subdivision thereof designated 'Fourth;' and one-half of forty-five per cent of the residuary estate of the said testator."

The underlying and basic grounds for the construction adopted by the learned surrogate are the supposed intent of the testator, to be gathered from the instrument itself, and the assumption that this construction is necessary to avoid a lapse. For any intent on the part of Mr. Fowles that any part of his estate should go to his wife's sister, Dorothy Elizabeth Smith, or to any child of his wife's sister, the testament will be scanned in vain. A few simple words would have effectuated such an intention, but any such words are carefully omitted. The only possible way of finding any such intent is to incorporate into the testator's will the provisions of the wife's will, which is contrary to the established rule in this State forbidding the incorporation into a will, by reference, of any extraneous instrument containing provisions of a testamentary character. (*Booth* v. *Baptist Church,* 126 N. Y. 215, 247; *Matter of O'Neil,* 91 id. 516, 523; *Matter of Emmons,* 110 App. Div. 701.) But, says the learned surrogate, "In no event did he intend that these legacies should accrue by his will to his own next of kin. When this is certain beyond all peradventure, the court should

not be astute to find reasons for benefiting directly those whom in no event testator himself wished to be benefited." On the contrary, the testator expressly provided that in the event that his wife should fail to make testamentary disposition of the one-half of the trust fund, as to which the power was given, it should be divided into two equal portions and paid over to trustees *for the benefit of the testator's two daughters.* The plain intent of the testator was that his wife should have the *power* to dispose of one-half of the trust fund by will, and that she should consult her own wishes in so doing, not that she should dispose of it to any persons in the mind of or selected by the testator, or to the exclusion of any persons in the testator's mind. The testator accordingly, and perfectly naturally, contemplated that his wife might fail to make a valid will, and also that if she made a will she might change her mind and destroy the will. In either of such contingencies, it is only fair to assume that the testator intended what he so plainly expressed, namely, that the one-half of the trust fund should go to his daughters. Least of all is there any intimation of intent in the will that one-half of the trust fund should go to the *executors* named in any will that his wife might make. Not only are the executors of Mrs. Fowles not mentioned in the testator's will, but the express provision of paragraph eighth is that one-half of the trust fund should be paid over " pursuant to the provisions of such last Will and Testament as my said wife may leave." But as such a provision could only be given effect by incorporating the wife's will in that of Mr. Fowles, which is illegal, it is assumed that the testator must have known that if the property did go in accordance with the wife's will (although a provision to that effect was invalid), it would necessarily go to the executors and trustees named therein. Accordingly, it is concluded that the *intention* of the testator was to devise the property *to the executors and trustees* under the wife's will. This strains " construction " beyond permissible limits, where there are no words in the will expressing any such intent and where the only purpose of such a construction and the effect of it is to dispose of the testator's property in accordance with the provisions of some other will, a result that is not sanctioned by the law. This is not will con-

First Department, March, 1917.          [Vol. 176.

struction but is tantamount to making for the testator a new will. If it be asked, what then was the purpose of the testator in adding paragraph ninth to his will, the answer is that it was an attempt to incorporate in his will the provisions of any will that his wife might leave, whatever they might be with respect to one-half of the trust fund, the objects of her bounty being indifferent to the testator. In other words, in such event, the disposition of this one-half of the trust fund was to accord with the intent of the wife as expressed in her will, and was not to be governed by any expressed intent or wish of the testator. But any such purpose could only be effected by the wife's exercise of the power conferred and was utterly ineffective and inoperative so far as dependent upon an incorporation of the terms of the wife's will into that of the testator. Seeking the objects of the testator's bounty from the will itself, as we must, and without resort to extraneous writings, there is not a line in it pointing either to the sister of the testator's second wife or to the wife's executors.

So far as concerns the assumption of a lapse or partial intestacy which this construction is adopted to avoid, there is no basis for it whatever. In the first place, the assumption of a lapse presupposes an intent on the part of the testator that a part of the corpus of the trust estate should go to Dorothy Elizabeth Smith, the wife's sister, and there was no such intent expressed or intimated. The other basis for the assumption of a lapse or partial intestacy is that if the imaginary legacy to Dorothy Elizabeth Smith failed, such part of the trust fund would lapse into the residuary estate, but, as pointed out above, the 8th paragraph of the will expressly provides that if Mrs. Fowles should fail to make testamentary disposition of the one-half of the trust fund (and she did fail, because she did not exercise the power conferred), this part of the trust fund passed to the testator's trustees for the benefit of his two daughters. Clearly, therefore, the supposed lapse, to prevent which such an artificial construction has been given to the will, is non-existent.

The learned surrogate based his decision upon *Matter of Piffard* (111 N. Y. 410), which was regarded as controlling and decisive. A careful consideration of the case will demonstrate that it affords no authority for the construction given

by the surrogate to the will of Mr. Fowles. The will of the testator in the *Piffard* case contained an express devise of his property to the executors named in his daughter's will. This provision was reaffirmed in a codicil executed by the testator after the daughter's death. Further, it appears from the opinion of Judge FINCH that the Court of Appeals regarded the decision as extending to the utmost limits the rule of so construing a will as to avoid intestacy, and that the decision was reached only to avoid intestacy. In the *Piffard* case the will provided: "I direct that such share or shares shall be paid over by my said executors to the executors or trustees named in and by the several wills of my said daughters in case of the death of them, or either of them, in my lifetime, instead of to my said daughter or daughters; but if my said daughters shall survive me, then such shares shall be paid to them severally, as now provided in and by my said will."

In a codicil the testator affirmed this bequest: "I do hereby direct that my said daughters Sarah Eyre Piffard and Ann Matilda Piffard, named in my said will, shall have power, by their several wills heretofore or hereafter duly made and executed, to dispose of, devise and bequeath the share of my estate devised and bequeathed to them severally in and by my said will; and to that end I direct that such share or shares shall be paid over by my said executors to the executors or trustees named in and by the several wills of my said daughters in case of the death of them, or either of them, in my lifetime, instead of to my said daughter or daughters; but if my said daughters shall survive me, then such shares shall be paid to them severally, as now provided in and by my said will."

Subsequently the daughter Sarah Piffard died and the testator, with knowledge of her death, reaffirmed his will by two further codicils. The Court of Appeals, admitting that the power conferred upon the daughter to dispose of the share of the estate bequeathed to her had failed, held that the bequest passed to her executors, *as distinctly provided in the will.* The court said, per FINCH, J.: "While, therefore, it may not be possible to sustain the power of appointment as such, and so enable Sarah's devisees and legatees to take the one-fifth by force of her will, it is possible to see in the will of the father a

clear intent to prevent a lapse and avoid a partial intestacy by carrying over the one-fifth which she did not take, through her executors, to those whom she should name as devisees and legatees of her property, and in the proportions by her directed. Her will, therefore, is referred to, not as transferring the property by an appointment, but to define and make certain the persons to whom and the proportions in which the one-fifth should pass by the father's will in case of the death of the daughter in his lifetime. What she would have done by her will but could not, that he did for her by his own will."

Previously in his opinion it appears that Judge Finch laid great emphasis on the codicil: "yet the further language of the codicil shows its intent to be that, in case of the death of the daughter in the lifetime of the father, the latter intended to devise and bequeath by force of his own will the daughter's one-fifth to such person or persons and in such shares and proportions as by an existing will, made before or after the date of the codicil, she had determined and directed or should determine and direct in the disposition of her own property; and 'to that end,' in aid of that result, he explicitly declares that the one-fifth given to her shall be paid over to her executors for the evident purpose of passing to her devisees and legatees that share precisely as if it had been her property at her death, and had become distributable as such by force of her will."

The differences between the *Piffard* case and the case at bar are fundamental. In the *Piffard* case the testator knew who would benefit under the daughter's will because she predeceased him, and with such knowledge the testator thereafter by codicil reaffirmed his will. In the *Piffard* case but for the construction given the will intestacy would have resulted. This factor, as we have shown, is not present in the case at bar, for the testator provided for an alternative gift to the trustees for the benefit of his daughters upon the failure of the power. In the *Piffard* case the testator, in the event that his daughter predeceased him, made his bequest *directly to her executors* instead of to the daughter. In the case at bar the testator has not only provided against intestacy but did not make his bequest to his wife, in the event of her death, in the alternative to her executors, *but according to the provisions of her*

*will.* The *Piffard* case should not be extended, for to do so would change the law of the State and open the door to the rejected doctrine of incorporation by reference. Three years after the decision of the *Piffard* case, Judge FINCH wrote the opinion of the Court of Appeals in *Booth* v. *Baptist Church* (*supra*) in which there was restated and reaffirmed the rule that the provision of another instrument cannot be incorporated by reference in a will. In his opinion in the *Booth* case Judge FINCH did not refer to the *Piffard* case, and it is evident that he did not regard the *Piffard* case as involving the question of incorporation by reference.

Two other cases cited in the surrogate's opinion to support his construction of this will are *Young Women's Christian Home* v. *French* (187 U. S. 401) and *St. John* v. *Andrews Institute* (191 N. Y. 254). In the first of these two cases the terms of the will showed clearly that the intent of the testatrix was to devise her property to the Young Women's Christian Home, in the event of the contingency which actually occurred. The only difficulty presented was that through an obvious inadvertence, apparent upon the face of the will and in no way obscuring the intent of the testatrix, there was a failure to use the precise language which would meet the situation which actually occurred. In order to prevent a lapse the court construed the will as though the words thus inadvertently omitted had been contained in the will. The *St. John* case turned upon the validity of the testator's gift to a charitable corporation to be created after the testator's death under directions contained in his will, and did not involve the questions presented in the case at bar.

In *Condit* v. *De Hart* (62 N. J. Law, 78) a power of appointment was given the son by a first codicil to his father's will. The son subsequently died first, leaving a will containing an attempted execution of the power. After the son's death the father executed a second codicil in which he said of the power previously given the son by the first codicil, "which codicil I do now, in all respects, ratify and confirm." Respondents cite this case in support of the surrogate's decision, but its force is destroyed by the fact that after the death of the son the testator reaffirmed his first codicil; also by the policy of

First Department, March, 1917.          [Vol. 176.

our law with respect to incorporating in a will extraneous writings.

It seems to us, therefore, that the construction given to the will in the case at bar was unwarranted either in principle or by authority.

It is further contended that the two bequests of the twenty-two and one-half per cent of the residuary estate to trustees for the testator's two daughters and their issue in case Mrs. Fowles failed to make testamentary disposition thereof could become effective only on affirmative proof that Mrs. Fowles failed to make such testamentary disposition. In other words, it is claimed that the burden of proof is upon the daughters to show that Mrs. Fowles predeceased her husband. This contention is not well founded. By the will, as we have seen, the testator expressly provided that if the wife failed to exercise the power, the bequest should go to trustees for his two daughters. Under that provision of the will it was necessary for those claiming *under the wife's will* to prove that the wife had exercised that power. In the absence of such proof the alternative provision in the testator's will took effect. The appellants are not basing any claim upon the fact that the wife did or did not survive the testator. In the absence of any proof of the exercise of the power of appointment by the wife, the will of the testator itself disposed of the property, and the burden was on any person claiming under the exercise of the power to establish that the power was executed.

In so far as the validity of any devise of real estate in England is concerned, the law of England will govern, and, at least on this record, the courts of this State have no concern with it.

With respect to the specific legacy of $5,000 to the testator's wife, and the personal property bequeathed by the fourth paragraph of the will, consisting of the personal property of the testator upon his English estate, these legacies, in default of any proof that Mrs. Fowles survived the testator, become a part of the residuary estate by operation of law.

The decree of the surrogate is, therefore, reversed, with costs to the appellants payable out of the estate, with instructions to the Surrogate's Court to enter a decree directing the executors

to transfer to the trustees one-half of forty-five per cent of the residuary estate pursuant to the eighth paragraph of the will.

CLARKE, P. J., SCOTT and DAVIS, JJ., concurred; PAGE, J., dissented.

PAGE, J. (dissenting):

I dissent. The "ninth" clause of the will of Charles Frederick Fowles is in my opinion neither an attempt by the testator to change the law applicable to deaths by common disaster by creating a presumption binding upon the courts, nor an attempt to incorporate into the will by reference the provisions of another will. The provision is merely a clearly expressed declaration of the testator's intention with respect to the disposal of his property in the event named, which event has come to pass. The will states: "*Ninth*. In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other * * * it shall be deemed that I shall have predeceased my said wife." In other words, the testator said, if my wife and I should die in a common disaster, and it cannot be determined which of us died first, I direct that my property be disposed of in the same manner in which the law would have disposed of it had I died first. He does not enjoin the courts to indulge in a presumption as to who died first. On the contrary, he recognizes that the courts could not legally adopt such a presumption, and requests them to indulge in a *fiction* for the purpose of effectuating his intention with respect to his property. The creation of a fiction is not an uncommon method of testamentary expression. We frequently find and give effect to such provisions as, for example, that a testator's property be distributed in certain events and at a time long subsequent to his death as if he "had then died intestate and without issue," or provisions that a child of the testator shall in a certain event "be deemed to have survived" him for the purpose of distributing his estate. To execute such directions we must assume a situation which is contrary to the actual facts and contrary to the result which would flow as a matter of law from the facts as they actually exist, and apply the law as if the fiction created by the testator

First Department, March, 1917. [Vol. 176.

were fact. This we frequently do in order to give effect to the right of every man to dispose of his property in accordance with his intention clearly expressed by will, provided such intention does not contravene either a rule of law or of public policy. The provisions of the "ninth" clause of the testator's will in the present case do not create a result which is contrary to public policy or good morals. The rule of law applicable to the actual facts is not material, for the testator does not request the court to apply a presumption to the actual facts, but to assume, in construing his will and distributing his property, a state of facts contrary to the actual facts and founded in pure fiction. This I think the court should do in accordance with the directions of the will.

If it be deemed that the testator's wife, Frances May Fowles, survived him, then her will, which in express terms purports to execute the power of appointment granted to her by the will of the testator, Charles Frederick Fowles, is a proper instrument in execution of the said power of appointment. The fact that at the time when her will was executed the power had not then vested in her is immaterial. (*Hirsch* v. *Bucki*, 162 App. Div. 659, 665, and authorities therein cited and discussed.)

Therefore, though I do not concur in the opinion of the learned surrogate of New York county, nor in the reasoning whereby he derived his result, I think the property which was subject to the appointment of Frances May Fowles by will should be transferred to the executors named in her will for distribution in accordance with her testamentary directions.

Decree reversed, with costs to appellants payable out of the estate, and decree ordered as stated in opinion. Order to be settled on notice.