JOSEPH DOBBINS, Appellant, *v.* THE PRATT CHUCK COMPANY, Respondent.

**Contract — sale — contract, evidenced by letters, for sale of scrap steel — department of defendant separately incorporated a few days before contract was made — acts indicating that defendant intended to contract as to scrap from all departments including the one separately incorporated — oral testimony competent to show what scrap the contract referred to — complaint construed to refer to output as contracted for and understood by parties — situation not affected by fact that plaintiff received bills for scrap from subsidiary corporation — situation not affected by claim of cancellation for non-payment by plaintiff where defense is based solely on claim that it was never under obligation to deliver.**

1. Where under the terms of a contract evidenced by two letters, the first from defendant, a corporation with many departments engaged in the manufacture of steel products, offering to sell to plaintiff, who had been its customer for several years, its " heavy scrap and light scrap, f. o. b. cars Frankfort," and the second from plaintiff reading, " We accept your offer on all your steel scrap," the defendant for a time, as in former years, delivered to the plaintiff the scrap steel from all of its departments including a department from which came ninety per cent of the heavy scrap but which, unknown to plaintiff, had been separately incorporated a few days before the contract was made, the defendant owning all the stock and managing and controlling the new corporation, such delivery indicated that the defendant considered the heavy steel scrap of its subsidiary as its own and that the words quoted from the two letters referred to all the scrap coming from defendant's factories including the separately incorporated department.

2. In this action, therefore, to recover for failure to deliver a portion of the heavy scrap originating in the subsidiary corporation, defended on the ground that the contract did not call for any scrap from that corporation and that the defendant did not contract regarding its output, oral testimony was competent to show what scrap the contract referred to. What may appear to be quite clear upon the face of the letters becomes ambiguous when defendant's acts and conduct are considered and we have a case within the purpose and object of the rule permitting parol evidence to explain a contract.

3. The plaintiff properly sued the defendant for the breach of its contract. Under the evidence in this case, the plaintiff was justified in alleging that the defendant treated the scrap steel of the subsidiary corporation as its own, which it absolutely controlled, could sell, and did sell to the plaintiff. In alleging that the plaintiff agreed to purchase the entire output of heavy and light scrap steel of the defendant corporation for one year, the plaintiff was dealing with the output of the defendant as controlled by it and within its power of disposal. The complaint had reference to the output as contracted for and understood by the parties.

4. That the plaintiff received bills for scrap delivered from the subsidiary corporation does not change the situation. After the making of his contract, the plaintiff was informed that the defendant controlled the subsidiary corporation, and the evidence is conclusive that the scrap delivered was under his contract with the defendant. He had no contract with the subsidiary corporation. How the defendant desired to keep its books or make deliveries under its contracts might very well have been a matter of indifference to the plaintiff.

5. Nor is the situation affected by a claim that the contract was canceled by failure of the plaintiff to make payments where in fact it was not canceled, but carried out by the defendant as agreed, with the exception of the amount of scrap here sued for. The defense is under the original contract. There is no claim that any new arrangement relieved the defendant from its obligation to deliver such scrap. Its claim is that it was never under any obligation to deliver it.

*Dobbins* v. *Pratt Chuck Co.*, 210 App. Div. 278, reversed.

(Argued December 17, 1925; decided February 24, 1926.)

APPEAL from a judgment, entered November 6, 1924, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Clayton R. Lusk* and *James F. Dougherty* for appellant. The rule that oral evidence cannot be given to vary, modify or alter a contract plain on its face has no application to this contract in the light of the admissions of defendant itself. (*Murdock* v. *Gould,* 193 N. Y. 369; *Thomas* v. *Scutt,* 127 N. Y. 141; *Petrie* v. *Trustees of Hamilton College,* 158 N. Y. 458; *Orois* v. *Elmira, C. & N. R. Co.,* 17 App. Div. 187; 172 N. Y. 656; *Reed* v. *Ins. Co.,* 95 U. S. 23.) Having demonstrated there was a latent ambiguity in the contract warranting resort to oral evidence to explain it, the argument of defendant's liability is further amplified by the practical construction put upon the contract by the parties. (*Nicoll* v. *Sands,* 131 N. Y. 19; *Seymour* v. *Warren,* 179 N. Y. 1.) Plaintiff is not asserting there was no distinction between the defendant and the Pratt Fork and Hoe Corporation, but does insist that the distinct legal entity of the subsidiary has no application to this case. (*Erkenbrecher* v. *Grant,* 187 Cal. 7; *So. Pac. Terminal Co.* v. *Int. Comm. Comm.,* 219 U. S. 498; *The William Van Driel, Sr.,* 252 Fed. Rep. 35.) Waiver of a breach — even retraction of a written notice of cancellation — does not amount to a modification of the contract. The contract under such circumstances stands as though there never was a cancellation. (*Nilson* v. *Morse,* 52 Wis. 240; *Cobb* v. *Hatfield,* 46 N. Y. 533; *McNaught* v. *Eq. Life A. Soc.,* 136 App. Div. 774; *Genet* v. *D. & H. C. Co.,* 28 App. Div. 328; *Canda* v. *Wick,* 100 N. Y. 121; *Mich. S. S. Co.* v. *Amer. Bonding Co.,* 104 App. Div. 347; *Loftis* v. *Pac. Mut. Life Ins. Co.,* 38 Utah, 532.)

*Arthur L. Evans* for respondent. The original contract of July 6 and 7, 1916, did not entitle the plaintiff to the Pratt Fork and Hoe Corporation's output of steel scrap. The evidence of a conversation between the plaintiff and the defendant's former president, Mr. Pratt, and an employee, Mr. Buckley, claimed to have occurred several

days before this written contract was made was inadmissible. (*Murdock* v. *Gould*, 193 N. Y. 369; *White's Bank of Buffalo* v. *Myles*, 73 N. Y. 340; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458.) The original contract of July 6 and 7 was terminated on November 18, 1916, by the defendant because of the plaintiff's defaults thereunder; and the alleged breach thereof occurred after said termination. (*Ferguson* v. *Chuck*, 236 N. Y. 149; *Heller & Bro.* v. *Continental Mills*, 196 App. Div. 7; 233 N. Y. 641; *Belnap* v. *Bender*, 75 N. Y. 446.)

CRANE, J. The Pratt Chuck Company is a corporation engaged in manufacturing and selling drill chucks and other steel products at Frankfort, New York, and produces steel scrap as a waste, or a by-product. Steel scrap is classed in the trade as " light " and " heavy " steel scrap according to its thickness; that which is one-quarter of an inch or more in thickness being known as heavy scrap. The company had many departments — a cap department, a chaplet department, the cable department, and a fork and hoe department. All the factory buildings, including that of the fork and hoe department, were right alongside of each other with only a railroad switch between them. They were about 100 feet apart. Most, if not all of the heavy scrap came from the fork and hoe department.

For years the plaintiff, who was in the steel scrap business at Homer, New York, doing business under the name of Dobbins Bros., had been a customer of the defendant. He had been buying steel scrap, both light and heavy, from the corporation for several years. The scrap thus purchased from and through the defendant came from all the departments; the heavy scrap coming from the fork and hoe department.

On July 6, 1916, the plaintiff placed another order with the defendant for steel scrap, evidenced by two letters constituting the contract of sale. They are as follows:

" THE PRATT CHUCK CO.
" Frankfort, N. Y.
" U. S. A.
" DOBBINS BROTHERS,     *July 6th,* 1916.
" Homer, N. Y.:

" GENTLEMEN.— Referring to your recent visit relative to Scrap, are pleased to advise that we will accept your contract for year ending June 30th, 1917, as per offer which we now make as follows:

" Heavy Scrap — $12.40 per G. T.— F. O. B. cars Frankfort.

" Light Scrap — $10.10 per G. T.— F. O. B. cars Frankfort.

" 30 days net.

" Kindly advise by return mail if you wish the Scrap at above prices as we are withholding acceptance from other parties.     Very truly yours,
" THE PRATT CHUCK CO.
C. H. BUCKLEY."

" JOSEPH DOBBINS     MAURICE DOBBINS
" HOMER, N. Y., *July* 7, 1916.
" THE PRATT CHUCK CO.,
" Frankfort, N. Y.
" To DOBBINS BROTHERS, Dr.
" CABBAGE

" Largest Cabbage Dealers in the United States. Storehouses in all the Leading Cabbage Sections of New York State.   Storage capacity, 6,000 tons.

"Annual shipments, 1,500 cars.   Wire or write us your wants.   We sell on track.   No commission stock.   Get in touch with us.

" GENTLEMEN.— Your letter of July 6th at hand.   We accept your offer on all your steel scrap for one year to July 1, 1917, at prices as below.

" Heavy steel scrap $12.40 G. T. Frank.

" Light steel scrap $10.10 G. T. Frank.

" This is a high price but will take the gamble.
" Respect. yours,
" DOBBINS BROS."

With the facts and relationships in mind, as just stated by me, there would be no question in anybody's mind that the scrap referred to covered the output of the defendant's factory, including all its departments, and especially that of the fork and hoe department from which came ninety per cent, if not all, of the heavy scrap. No distinctions had ever been made regarding the source of the output among the departments. This was an internal matter with which the purchaser had nothing to do.

At the time of these letters the plaintiff knew nothing about any change in the defendant's business. It appeared later that on July 1, 1916, five days before the order, the defendant had incorporated the fork and hoe department under the name of the Pratt Fork & Hoe Corporation, of which it owned all the stock. Outside of a change in the names of the officers, the business of the Fork & Hoe Corporation was run under the same management, and under the absolute control of the defendant. Being the sole stockholder, the Pratt Chuck Company as a fact ran and operated after July 1, 1916, the Pratt Fork & Hoe Corporation as it did its other departments, under its absolute power and control. As subsequently stated to the plaintiff: " They told me that they owned the control, the whole thing."

The defendant performed its contract and delivered to the plaintiff the scrap steel bargained for, with the exception of about 200 tons of the output of the fork and hoe department or corporation. All of the heavy scrap steel, with this exception coming from the Pratt Fork & Hoe Corporation, was delivered *under the contract* to the plaintiff. The plaintiff had no contract with the Pratt Fork & Hoe Corporation; no dealings with them whatsoever. His only contract was the letters above referred to passing between him and the Pratt Chuck Company. Under this contract, and in performance of it, the Pratt Chuck Company delivered to the plaintiff the heavy

steel scrap from the Pratt Fork & Hoe Corporation. These acts indicated that the defendant considered the heavy steel scrap of its subsidiary as its own, and that the words in the two letters " heavy scrap and light scrap, f. o. b. cars Frankfort," and " We accept your offer on all your steel scrap," referred to all the scrap coming from the defendant's factories, including the fork and hoe department, or corporation. Why should the courts strain to give an interpretation to a contract contrary to that which the parties themselves have acted upon?

For a failure to deliver the 200 tons of heavy steel scrap, the plaintiff brought this action. The defense has been that the contract did not call for any scrap from the Pratt Fork & Hoe Corporation; that this was a separate and distinct corporation; and that the defendant did not contract regarding its output. The Appellate Division in reversing a judgment recovered by the plaintiff has held that it was incompetent to introduce oral testimony to show what scrap the contract referred to. In this respect we cannot follow the Appellate Division.

What may appear to be quite clear upon the face of the letters becomes ambiguous when defendant's acts and conduct are understood. The contract to deliver all of its scrap steel may have two meanings when it appears that five days before the making of the contract the defendant divided itself into two parts, and that from one of the parts came ninety per cent of the subject of the contract. What these words " scrap f. o. b. cars, Frankfort, as per your offer " in the letter of the Pratt Chuck Company to the plaintiff mean and refer to, and what the words " all your steel scrap for one year to July 1, 1917," mean in Dobbins' letter to the defendant is dependent upon the relationship, the acts and conduct of the parties, the representations, and all the surrounding circumstances.

When we consider that the defendant and the plaintiff had theretofore dealt with the scrap from the fork and

hoe department; that this department was merely one of the defendant's factory buildings, part of its plant; that the department was incorporated only a few days before the contract, and controlled absolutely by the defendant; and that under the contract with the plaintiff the defendant thereafter delivered the steel scrap from the Fork & Hoe Corporation to the plaintiff; we have a case within the purpose and object of the rule permitting parol evidence to explain a contract. Such evidence does not contradict the words of the contract; it merely shows — and that quite clearly and almost beyond dispute — to what particular scrap the words apply. Concededly, the defendant controlled and could sell two artificially distinct classes of scrap; that of the Pratt Chuck Company as it existed after July 1, 1916, and that of the Pratt Fork & Hoe Corporation, its subsidiary, after that date. Did it contract to sell and deliver one or both? The contract did not specify. The previous conduct and relations of the parties, and the deliveries made under the contract by the defendant leave no doubt that it sold both.

If authority is needed for this proposition, so in accord with reason, we may refer to *Murdock* v. *Gould* (193 N. Y. 369, 374); *Petrie* v. *Trustees of Hamilton College* (158 N. Y. 458); *Orvis* v. *Elmira, C. & N. R. R. Co.* (17 App. Div. 187; affd., 172 N. Y. 656); *Reed* v. *Insurance Co.* (95 U. S. 23, 30); *Macdonald* v. *Longbottom* (29 L. J. Q. B. 256; 1 El. & El. 977); Beach on Contracts (sect. 742); *Nicoll* v. *Sands* (131 N. Y. 19, 24); *Seymour* v. *Warren* (179 N. Y. 1).

The plaintiff properly sued the defendant for the breach of its contract. Under the evidence in this case, as above outlined by me, the plaintiff was justified in alleging that the defendant treated the scrap steel of the Fork & Hoe Corporation as its own, which it absolutely controlled, could sell, and did sell to the plaintiff. In alleging that

8

the plaintiff agreed to purchase the entire output of heavy and light scrap steel of the defendant corporation for one year, the plaintiff was dealing with the output of the defendant as controlled by it and within its power of disposal. The complaint had reference to the output as contracted for and understood by the parties. The United States Supreme Court in a recent decision has held a railroad corporation liable in an action at law for negligence, where the accident happened on a branch of its system operated under the name of another railroad corporation. This other corporate entity did not prevent liability, where under the circumstances of the case the absolute control and management was with the defendant. (*Davis* v. *Alexander*, 269 U. S. 114.) We do not need to go so far in this case, as it is not the point under discussion. I merely cite this authority as showing that we should be liberal in construing this pleading referring to the defendant's output, as in this case covering its subsidiary. However, no point is made that the pleadings do not conform to the proof.

It is said that the plaintiff received bills for scrap delivered from the Pratt Fork & Hoe Corporation. I do not see how this changes the situation. After the making of his contract, the plaintiff was informed, as I have above stated, that the defendant controlled the Fork & Hoe Corporation, and the evidence is conclusive that the scrap delivered was under his contract with the defendant. He had no contract with the Fork & Hoe Corporation. How the defendant desired to keep its books or make deliveries under its contracts might very well have been a matter of indifference to the plaintiff.

Some point has been made of the fact that the contract was canceled in November of 1916 by the failure of the plaintiff to make payments. Whatever was said in order to get money out of the plaintiff raises no new points of law, as the contract was not in fact canceled, but carried out by the defendant as agreed, with the exception of the

amount of scrap here sued for. The defense is under the original contract. There is no claim that any new arrangement relieved the defendant from its obligation to deliver these 200 tons. Its claim is that it was never under any obligation to deliver them.

For the reasons here stated, the judgment of the Appellate Division should be reversed, and as it was based entirely upon the law, that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

Hiscock, Ch. J., Cardozo, Pound and Lehman, JJ., concur; McLaughlin and Andrews, JJ., dissent.

Judgment accordingly.