In the Matter of the Probate of the Will of SARAH H. SMITH, Deceased.

CORA D. REEVES et al., Appellants; CITY BANK FARMERS TRUST COMPANY et al., Respondents.

284

(Argued June 5, 1930; decided July 8, 1930.)

*Stanley W. Jones* for appellants. A will is ambulatory until death, and may be revoked at will and in any manner in conformity with the statutes at any time by a testatrix, and when a testatrix uses clear, unambiguous words of revocation in a will which in itself contains no ambiguity, these words are to be held to mean exactly what testatrix has said, and extraneous evidence is not admissible to show a contrary intent; and her intention must be ascertained from her last will, alone, its language being clear and unambiguous. (*Lasier* v. *Wright*, 304 Ill. 130; *Matter of Gloucester's Est.*, 11 N. Y. Supp. 899; *Matter of Forbes*, 24 N. Y. Supp. 841; *Matter of Barnes*, 70 App. Div. 523; *Matter of Williams*, 70 N. Y. Supp. 1055; *Matter of Horton*, 163 App. Div. 213; *Brown* v. *Quintard*, 177 N. Y. 75; *Matter of Miner*, 146 N. Y. 121; *Wadsworth* v. *Murray*, 161 N. Y. 274; *Baylies* v. *Hamilton*, 36 App. Div. 133;

165 N. Y. 641; *Osburn v. Rochester Trust & Safe Deposit Co.*, 209 N. Y. 54; *Matter of Cunnion*, 201 N. Y. 123; *Matter of Thompson*, 11 Paige, 453; *Matter of Bump*, 234 N. Y. 60; *Matter of Kennedy*, 167 N. Y. 163; *Throckmorton v. Holt*, 180 U. S. 552; *Matter of Keleman*, 126 N. Y. 73; *Dwight v. Fancher*, 245 N. Y. 71.)

*C. Alexander Capron, George N. Whittlesey* and *Edward M. Cameron, Jr.*, for City Bank Farmers Trust Company et al., respondents. The surrogate and the Appellate Division correctly determined that the revocation clause contained in the Florida will of 1924, was not imperative, but should be construed so as to effectuate the intention of the testatrix. (Schouler on Wills [6th ed.], § 615; Jarman on Wills [6th ed.], 170; *Van Wert v. Benedict*, 1 Bradf. 114; 1 Williams on Executors [10th ed.], 122; *Denny v. Barton*, 2 Phill. 575; *Owens v. Fahnestock*, 110 S. C. 130; David's New York Law of Wills, § 367; *Matter of Purdy's Will*, 20 N. Y. Supp. 307; *Matter of Pilsbury*, 50 Misc. Rep. 367; 113 App. Div. 893; 186 N. Y. 545; *Canfield v. Crandall*, 4 Dem. 111; *Osburn v. Rochester Trust & Safe Deposit Co.*, 209 N. Y. 54.) The determination that it was not the intention of the testatrix by her 1924 Florida will to revoke her New York will is correct. (*Waterman v. N. Y. Life Ins. & Trust Co.*, 237 N. Y. 293; *Matter of Ossman v. Von Roemer*, 221 N. Y. 381.) Evidence of extrinsic facts and circumstances was properly received by the surrogate. (*Matter of Neil*, 238 N. Y. 138; *Morris v. Sickley*, 133 N. Y. 456; *McGoldrick v. Bodkin*, 140 App. Div. 196; 1 Jarman on Wills [6th ed.], 431; *Ely v. Megie*, 219 N. Y. 112; *Carley v. Harper*, 219 N. Y. 295; *Matter of Phipps*, 214 N. Y. 378; *Matter of Turner*, 206 N. Y. 93; *Matter of Lummis*, 101 Misc. Rep. 258; *Matter of North*, 52 Misc. Rep. 429; *Matter of Kavanagh*, 133 Misc. Rep. 399; *Matter of Miner*, 146 N. Y. 121; *Young v. Valentine*, 177 N. Y. 347.)

*Herbert S. Schoonmaker* for Young Men's Christian Association, respondent. There was no intention to revoke the New York will of 1911 by the revoking clause in the Florida will of 1924. (*Matter of Purdy's Will*, 20 N. Y. Supp. 307; *Brown* v. *Quintard*, 177 N. Y. 75; *Matter of Oswold*, 3 P. & D. 162.) The introduction of extrinsic evidence at the trial was not prejudicial to the contestants and was properly admitted. (Schouler on Wills [3d ed.], § 579; David's New York Law of Wills, 784; Thompson on Const. of Wills, 69; *Matter of Neil*, 238 N. Y. 138; *Morris* v. *Sickley*, 133 N. Y. 456; *Ely* v. *Megie*, 219 N. Y. 112; Surrogate's Court Act, § 294; *Matter of Miner*, 146 N. Y. 121; *Young* v. *Valentine*, 177 N. Y. 347; 1 Jarman on Wills, 430.)

KELLOGG, J. The question is whether or not a printed clause contained in a will, executed by the testatrix in the State of Florida on the 22d day of March, 1924, reading " hereby revoking all former Wills by me made," had the effect of revoking a prior will, made in the State of New York on August 28, 1911, which has been offered for probate.

The New York will, made in 1911, makes disposition of no assets of the testatrix other than those situate in the State of New York, for the testatrix expressly provides therein that " every provision of this will is to be satisfied out of the property located at my death in said State of New York." The testatrix further expresses it to be " my intention to make a separate will disposing of my property situated in Florida and elsewhere outside of the State of New York, in which will I shall direct the payment of my debts and funeral expenses from the proceeds of my Florida property." The New York properties are not to be subject to the payment of her debts; none of her assets there situate are to be transmitted at her death to any other State for purposes of administra-

tion. All former wills, " so far as the same may in any way affect any property situated at the time of my death in the State of New York " are revoked. The will also contains this clause: " It is my will that no other or later testamentary instrument executed by me shall be deemed to affect in any way the terms and provisions of this instrument unless it is so specified in said other or later instrument." In the year 1912 the testatrix, in Florida, executed a second will. Its execution was in apparent compliance with the purpose announced in her prior will. The instrument states that she executed it " for the purpose of disposing of property which I have, and which I may hereafter be possessed of, which is not disposed of by my former will." She then makes disposition of " all such property which is not disposed of by my former will." S. A. Wood, is appointed executor by the will. The will, made in Florida on the 22d of March, 1924, was on a printed form, the blanks of which were filled in with typewriting. This clause appears in the will: " Likewise I make, constitute and appoint R. H. Boyd, of De Land, Fla., without bond, to be my executor of this my last will and testament, hereby revoking all former wills by me made."

The testatrix was possessed of an estate, at the time of her death, of the approximate value of $50,000. Forming part of her estate were securities of the value of $23,000. These securities, or other securities, which they replaced, had been physically present in New York city, in the custody of the City Bank Farmers Trust Company ever since the year 1909, when the testatrix delivered them to that bank for safekeeping. Frequently, during the intervening years, the testatrix expressed her intention to maintain this fund in New York city, apart from all other funds by her owned. Often she said she desired these funds to be disposed of at her death through the New York courts. These were the securities of which

the testatrix made disposition by the New York will of 1911.

When the testatrix executed the New York will her nearest relatives were May and Anna Peats, daughters of a sister, and Cora Reeves, a daughter of another sister. She also had a connection by marriage, Mabel Bloodgood, whom she called a niece. By the New York will she bequeathed the life use of a fund of $5,000 to May Peats and the principal to Mabel Bloodgood; the life use of another fund of $5,000 to Anna Peats and the principal to Cora Reeves; the sum of $4,500 to various charities; all the rest and residue to the Young Men's Christian Association and the Children's Aid Society, both of New York city. By her 1912 Florida will she devised certain real estate to certain persons named, and gave all the residue of her property, other than her New York securities, to Cora Reeves. Soon afterwards the testatrix sold all the devised real estate, so that, under that will, Cora Reeves would receive all her property other than the New York properties. By her 1924 will the testatrix made legacies to charities, totaling $900, left to her cousin Amelia Bordeaux a government bond for $1,000, and to Cora Reeves a similar bond for the same amount. At this time May Peats was dead, but Anna, although insane, was living. No residuary clause appeared in the will. Thus, the testatrix from an estate of $50,000, made gifts of $2,900 only.

If the two prior wills were intended to be revoked by the clause to which we have referred, the testatrix must have desired that her entire estate, less $2,900 bequeathed, should pass by intestacy to Anna Peats, an insane person, and Cora Reeves, in equal shares. Before her death the testatrix sold the two bonds bequeathed by her will of 1924, and Anna Peats had died. If the revocation be deemed universal, therefore, Cora Reeves will receive the entire estate less legacies of $900. On the other hand,

if the New York will of 1911 survives, Mabel Bloodgood will receive $5,000, the various charities $5,400, the Young Men's Christian Association and the Children's Aid Society about $4,250 each, and the balance of the estate will pass to Cora Reeves.

It is the modern rule that " with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence," can be shut out. (Thayer's Preliminary Treatise on Evidence, 445; Wigmore on Evidence, vol. 5, § 2470; *Matter of Neil*, 238 N. Y. 138; *Dobbins* v. *Pratt Chuck Co.*, 242 N. Y. 106.) Sometimes the rule has been stated with the proviso that extrinsic facts may be shown in cases only " where the language alone is of doubtful import." (*Morris* v. *Sickly*, 133 N. Y. 456.) We take this to mean merely that the probable intention of the writer, as indicated by extrinsic facts, may not prevail over the plain meaning of the written word, nor have any force whatever, unless the words incorporated in the writing are susceptible of a meaning which expresses the intent thus disclosed. It has been said by Professor Wigmore: " The truth had finally to be recognized that words always need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document." (Wigmore on Evidence, § 2470, subd. 3.) The process of interpreting a legal document has been defined as follows: " To interpret a legal writing is, therefore, first to collect the intent, to discover the writer's meaning; secondly, to ascertain that that meaning is expressed sufficiently." (On the Principles of Legal Interpretation by F. Vaughan Hawkins, Esq., see Appendix C to Thayer's Treatise, p. 581.)

We have here a will made in 1911, providing that no

later will shall affect the terms of the instrument " unless it is so specified in said other or later instrument," coupled with a later will, made in 1924, containing the printed clause, " hereby revoking all former wills by me made." No one supposes that the testatrix by the cited phrase of the earlier will deprived herself of the power of making a subsequent revocation of its terms. Nor can it be supposed that the earlier statement, made in 1911, is a declaration defining the testator's meaning, attempted to be expressed in a written utterance made in 1924. (*Brown* v. *Quintard,* 177 N. Y. 75.) We have not a case, therefore, where there is proposed a violation of the settled rule that express declarations of intention, not contained in a will, except in cases of equivocation as to the subject or object of a gift, may never be shown. (Wigmore on Evidence, § 2471.) The question is whether certain facts, extrinsic to the writing, indicate that the literal meaning of the language employed is not in accord with the meaning which the testatrix intended to give it, and whether, when the real intent is shown, the words are adequate to express such intent.

We know that in 1909 the testatrix separated from her assets securities of the value of $23,000; that she sent these securities to a bank in New York city for safe keeping as a separate fund apart from all other funds; that she. made a disposition of these securities and no others in a will made in New York city in 1911; that in this will she expressed her desire that the instrument should be irrevocable except by a revoking clause expressly dealing therewith; that she maintained the securities in New York as a separate fund until 1924; that she frequently expressed her wish that these securities be administered by the New York rather than the Florida courts; that in 1912 she made a will in Florida disposing of her properties in Florida and elsewhere, except that no disposition was made of the New York properties;

that in 1924, although she possessed assets valued at $50,000, she made a will without a residuary clause, disposing of no more than $2,900. It is thus made apparent that the testatrix, throughout a long period, from the date of her earliest to that of her latest will, cherished the thought that her New York properties, and her properties elsewhere situate, were things apart which should be managed independently and be disposed of separately. Such having been her state of mind and persistent thought, it is highly probable that the testatrix, in executing the Florida will of 1924, wherein an omission to mention the New York properties and the New York will is made, had no intention to revoke the testamentary disposition thereof previously provided for. We think that an intent thus limited finds sufficient expression in the revoking clause employed by her. The testatrix revokes " all former wills by me made " whereby properties other than those situate in New York State were made the subject of disposition. For this view we find authority in the following: *Denny* v. *Barton* (2 Phillim. 575); Jarman on Wills ([6th Am. ed.], vol. 1, p. 170); Williams on Executors ([5th Am. ed.], vol. 1, p. 122).

The order should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Order affirmed.