## In the Matter of the Estate of MIRIAM C. LEVY, Deceased.

Surrogate's Court, New York County, August 14, 1940.

*Harold H. Levin,* for the petitioners.

*Charles J. Katzenstein,* for Lisa May D'Azevedo, respondent.

*Sidney M. Wittner,* for Carmen Sylvia Bernheim, respondent.

FOLEY, S. In this proceeding for the construction of the wills of the testatrix, her daughter, a legatee, Winnifred Z. Glucksman, seeks a determination as to whether a gift of £1,000 sterling, created by the covenant in a so-called indenture for the benefit of another daughter, shall be paid out of the New York assets or out of the assets located in Jamaica, West Indies, and under separate administration there.

The testatrix was a subject of Great Britain, but died domiciled in the county of New York. She left separate testamentary instruments with independent disposition of her property in each of the two jurisdictions. The will which dealt with her New York property was made on April 9, 1934. The bequests in that instrument, which are relevant here, were made effective by the residuary clause. In it she gave the balance of the estate outright to her four daughters in equal parts. She directed, however, that advancements made to the petitioner aggregating $15,285, should be brought into the account and be treated as forming part of her estate. She further provided that if the share of the petitioner, when thus ascertained, should be less than the amount of the advancements, any liability for the payment of the deficit should be excused and released. On March 17, 1939, she executed a codicil to that will, which made further provision for two pecuniary legacies.

Three days after the making of her New York will, and on April 12, 1934, she executed her will in Jamaica, in which she stated: " I declare this to be my last will and testament so far as concerns my sixteen shares in Jamaica Fruit & Shipping Company Limited and all other Jamaica property if any of which I may die possessed and that any other disposition of property testamentary or otherwise heretofore or hereafter made by me shall be construed as affecting only property of mine outside of Jamaica

and shall not affect or be affected by this my Jamaica will unless I shall therein expressly so declare." She further declared that her Jamaica property should stand charged with certain small annuities. So far as the effective dispositions were borne out by the actual circumstances at the time of her death, she gave the residue of her estate to her four daughters in equal parts.

All three testamentary instruments were drafted by a solicitor in Jamaica and executed in that island. The indenture in controversy here was likewise drawn and executed there on November 7, 1935. In it the testatrix was described as the covenantor and her daughter, Carmen Sylvia Bernheim, as the covenantee. It read: " in consideration of the sum of ten shillings and in consideration of natural love and affection the covenantor for herself and for her heirs and personal representatives hereby covenants with the covenantee to pay to the covenantee at the death of the covenantor the sum of One Thousand Pounds Sterling and that no devise legacy or benefit which may accrue to the covenantee under or by virtue of the last will or codicil of the covenantor shall in any manner be deemed a satisfaction or a satisfaction pro tanto of the obligation hereunder created. And it is hereby agreed and declared that this Indenture shall be read and construed and shall take effect in all respects according to the Laws of the Island of Jamaica."

The petitioner contends that the sum of £1,000 sterling became a charge upon the New York property. The respondents, her sisters, assert, on the other hand, that the purpose of the testatrix was to direct payment of the amount out of her Jamaica estate.

The surrogate sustains the latter contention and holds that it was her clear intent that the charge imposed by the indenture was laid upon the foreign assets and not upon those left in this State. When the four instruments are read together, the plan of the testatrix for a separate and independent disposition of the assets within the two jurisdictions is clearly revealed. The objective and motives of the petitioner have been frankly stated by her counsel. Due to the charge for the advancements made to her in her mother's lifetime, which is laid upon her share of the New York assets, and because of their insufficiency, no money will be paid to her. If the amount required by the indenture is charged out of New York assets, the burden will fall, therefore, only upon her sisters. In the Jamaica will no mention of the advancements to the petitioner was made and the payment of the covenanted amount out of the Jamaica property would be borne by all of the four daughters equally.

The terms of the indenture itself, the choice of the words used by the testatrix and by the draftsman of the instrument, emphasize her intent to impose the charge upon the Jamaica estate. The

meaning of the indenture is to be discovered by its reference to the law which the testatrix had in mind at the time of execution. Again, the fact that the covenanted amount was expressed in English currency rather than in American dollars, is strongly significant. In her New York will there was no mention made of the currency of either country. In her codicil, however, she made two bequests of $2,500. No legacy of pounds was included in that document. Even stronger indication of her purpose was found in her statement in the indenture that " it is hereby agreed and declared that this Indenture shall be read and construed and shall take effect in all respects according to the Laws of the Island of Jamaica." Doubt must have existed in the minds of the testatrix and of her legal adviser that there was a possibility that the instrument might be illegal in New York because of its testamentary nature, since it lacked the essential requirements for the execution of a will under the laws of either jurisdiction.

It is the contention of counsel for the petitioner that the language of the will of 1934 disposing of the Jamaica assets precludes any determination that the covenanted amount should be paid out of the assets in that locality. The material portion of that will reads: " any other disposition of property testamentary or otherwise heretofore or hereafter made by me shall be construed as affecting only property of mine outside of Jamaica and shall not affect or be affected by this my Jamaica will unless I shall therein expressly so declare."

There are two complete answers to this contention. First, the direction of the testatrix in her will was not intended to be forever irrevocable. A clause of almost similar import was construed in *Matter of Smith* (254 N. Y. 283). There the testatrix made a New York will in 1911 disposing of her New York assets. In 1912 she executed her second will disposing of her Florida property. In 1924 she executed an instrument in Florida which revoked " all former wills by me made." The Court of Appeals held that the clause of revocation did not apply to the New York testament but nullified, only, the earlier Florida will. The two estates in the different jurisdictions were intended by the testatrix to be " managed independently and be disposed of separately." The earlier New York instrument contained the clause: " It is my will that no other or later testamentary instrument executed by me shall be deemed to affect in any way the terms and provisions of this instrument unless it is so specified in said other or later instrument." Judge KELLOGG in the opinion of the court stated that no one could suppose that the testatrix by the cited phrase of the earlier will deprived herself of the power of making a subsequent revocation

of its terms. Nor could it be inferred " that the earlier statement, made in 1911, is a declaration defining the testator's meaning, attempted to be expressed in a written utterance made in 1924. * * * The question is whether certain facts, extrinsic to the writing, indicate that the literal meaning of the language employed is not in accord with the meaning which the testatrix intended to give it, and whether, when the real intent is shown, the words are adequate to express such intent."

It is equally clear here that the expression in the Jamaica will was not intended to make that instrument irrevocable. The reservation of the right of the testatrix to change her mind must be inferred. It is, moreover, plain that a severance of the two groups of property between the two jurisdictions was planned.

The second answer to the contention of counsel for the petitioner is found in the language of the indenture itself. The Jamaica will had recited that any other disposition of her property in Jamaica shall not affect or be affected " by this my Jamaica will unless I shall therein expressly so declare." The indenture expressly declared that it shall be construed " according to the Laws of the Island of Jamaica." In the opinion of the surrogate, this clause constituted a sufficient relation back and modification of the Jamaica will.

In so far as the application, therefore, seeks a direction of the payment of the covenanted amount of £1,000 out of the New York assets, it is denied.

The further question as to the rate of exchange to be employed in the payment of the covenanted amount is beyond the jurisdiction of this court. That question is exclusively for the determination of the court in Jamaica which has control of the administration of the estate there.

Submit order on notice accordingly.