ABRAHAM JACOBOWITZ, Appellant, *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, Respondent.

First Department, March 29, 1960.

*David Belson* for appellant.

*Thomas A. Hartnett* of counsel (*Watters & Donovan,* attorneys), for respondent.

McNally, J.   In an action on two accident and health policies wherein the plaintiff sought a recovery of $1,400, plaintiff appeals by leave of this court from an order of the Appellate Term unanimously affirming, without opinion, a judgment of the Municipal Court, Borough of Manhattan, Second District, entered on a verdict in favor of the plaintiff in the sum of $600, and an order of that court denying plaintiff's motion for a new trial.

The policies are respectively dated March 29, 1951 and February 21, 1952.   Each provides as follows:

" PART D.   Sickness Benefits

" CONFINING TOTAL DISABILITY BENEFITS

" If the Insured, because of such sickness, shall be continuously confined within doors, the Association will pay benefits for one day or more (benefits begin on the day of the first medical treatment during confinement) during the period of such confinement at the rate of One Hundred ($100) Dollars per month   *   *   *.

" PART E.

" NONCONFINING TOTAL DISABILITY BENEFITS

" If the Insured, because of such sickness, shall not be continuously confined within doors but shall be totally and continuously disabled, the Association will pay benefits for one day

or more (benefits begin on the date of the first medical treatment during disability) during the period of such disability, but not to exceed three months for any one sickness, at the rate of One Hundred ($100.00) Dollars per month  *  *  *.''

Under the two policies in suit, the defendant agreed to pay one of two benefits in the event of sickness. In the event that the insured was totally disabled and " continuously within doors ", he would be paid the sum of $100 a month during the period of such confinement. On the other hand, if his disability did not " confine the insured continuously within doors ", he would be paid the sum of $100 a month, but not exceeding three months. These alternative benefits are expressions of an intent to provide benefits for an unlimited period of time if the insured's sickness or illness continuously confined him within doors, but to provide only limited benefits if he was not so totally confined.

Defendant contested liability in respect of confining total disability and conceded liability for nonconfining disability. The jury's verdict is in accord with the defendant's view of the case.

During April, 1952, plaintiff, then 57 years of age, underwent surgery for cancer of the stomach. His entire stomach was excised and an artificial stomach created by insertion of the esophagus into the intestine. In addition, plaintiff suffers from diabetes, gout, prostate trouble and symptoms related to an artificial stomach consisting of pain, nausea, vomiting and general debility.

Defendant made payments to the plaintiff for confining total disability at the rate of $100 a month in respect of each policy for the period April, 1952 to June 10, 1958. During June, 1958, defendant requested plaintiff to submit to a physical examination. Thereafter, defendant refused to pay confining total disability and offered to pay nonconfining disability benefits.

Permanent and total disability is conceded. The sole issue is whether plaintiff was continuously confined within doors within the meaning of the confining total disability clause of each of the policies herein.

The evidence adduced by the plaintiff was that except for occasionally sitting on a bench in front of his apartment house for an hour or two during the summertime, attending a synagogue when the weather was fine and attending at the office of his physician for medical attention, plaintiff was continuously confined within doors. Defendant submitted no witnesses and relied entirely upon the cross-examination of the plaintiff's witnesses which gave rise to the suggestion that plaintiff had vacationed in the country during the month of July, 1958.

We are of the opinion that the verdict is against the weight of the credible evidence and in the interest of justice a new trial should be directed.

The necessity of a new trial prompts the following observations. The court's charge did not present to the jury any standard for the construction of the controverted meaning and application of the clause " shall be continuously confined within doors.'' Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts. The appropriate standard for construction of contracts of insurance was aptly stated in *McGrail* v. *Equitable Life Assur. Soc.* (292 N. Y. 419, 424-425) : '' When the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense (*Johnson* v. *Travelers Insurance Co.,* 269 N. Y. 401, 408). But resort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity (*Silverstein* v. *Metropolitan Life Ins. Co.,* 254 N. Y. 81) or place one party at the mercy of the other (*Russell et al.* v. *Allerton,* 108 N. Y. 288, 292). Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written (*Lewis* v. *Ocean Acc. & G. Corp.,* 224 N. Y. 18, 21; *Silverstein* v. *Metropolitan Life Ins. Co., supra*). Consistently followed in this State has been the rule that the policy must be construed reasonably and that it must be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties must reasonably have intended by its terms when the policy was written by defendant and accepted by the plaintiff (*Garms* v. *Travelers Insurance Co.,* 242 App. Div. 230; *Williams* v. *John Hancock Mut. Life Ins. Co.,* 245 App. Div. 585; *Goldstein* v. *Connecticut General Life Ins. Co.,* 273 N. Y. 578; *Mintz* v. *Equitable Life Assurance Society,* 276 N. Y. 546; *Hartol Products Corp.* v. *Prudential Insurance Co.,* 290 N. Y. 44).''

Under the circumstances of this case, the practical construction of the parties during the period April, 1952 to June, 1958 may be a proper standard for the interpretation and construction of the said clause. (*Dobbins* v. *Pratt Chuck Co.,* 242 N. Y. 106, 113; *Nicoll* v. *Sands,* 131 N. Y. 19, 24; *City of New York* v.

*New York City Ry. Co.,* 193 N. Y. 543, 549.) If, to the knowledge of the parties, the activities of the plaintiff prior and subsequent to June, 1958 were substantially similar in respect of his confinement within doors then it was for the jury to decide whether upon the evidence the plaintiff was continuously confined within doors within the meaning of the policies.

Moreover, plaintiff's wife was cross-examined in regard to alleged statements made to defendant's investigator. Defendant did not offer the testimony of its investigator. In that connection the court charged as follows:

"In September she testified he did not go riding with the daughters. She testified that she did not tell an investigator that her husband went riding with the daughters. Where is the investigator? That is what she said. Where is the investigator? Why wasn't the investigator called to testify in this case.

" Now, I charge you that while you cannot draw any inference if such an investigator was called, he would testify unfavorably against the insurance company, the defendant in this case, nevertheless you may draw any inference that you think warranted by the failure of any party to call any witness who might materially shed light on this transaction.''

In charging that the jury may not infer that the investigator would testify unfavorably to the defendant but that the jury was free to draw any inference '' that you think warranted '', the court did not convey to the jury that plaintiff was entitled to the strongest inferences which may be drawn against the defendant which the plaintiff's evidence in the record permits. (*Noce* v. *Kaufman,* 2 N Y 2d 347, 353.)

The order of the Appellate Term and the judgment and order of the Municipal Court should be reversed, on the law and on the facts, and in the exercise of discretion, and a new trial ordered, with costs to abide the event.

RABIN, J. P., M. M. FRANK, VALENTE and STEVENS, JJ., concur.

Determination of the Appellate Term and the judgment and order of the Municipal Court reversed, on the law and on the facts, and in the exercise of discretion, and a new trial ordered, with costs to abide the event.