Joseph A. Cox, S.
Following the testator’s death in 1922 his will, executed in 1919, was admitted to probate. At the date of the will the testator’s immediate family consisted of his wife and four children. The youngest child, Geraldine Rockefeller Dodge, was 37 years of age at the date of the will and she then was married to a man of substantial wealth. At that time the testator also had 15 grandchildren.
A stipulation of facts has been submitted and, while the statements in such stipulation are not challenged, the parties are not in agreement as to the relevancy and admissibility of all of the facts upon the issues here presented. Insofar as the construction of the will is concerned, the facts which establish the circumstances surrounding the execution of the will constitute the only proof entitled to consideration (Matter of Smith, 254 N.Y. 283).
Prior to the execution of his will the testator had established a number of inter vivos trusts for the benefit of his children. The principals of the trusts for the primary benefit of his daughter Geraldine Rockefeller Dodge totalled more than $10>-000,000. The testator’s gross estate at his death was in excess of $102,000,000. His will created a number of trusts of which two trusts were for the benefit of Geraldine Rockefeller Dodge. These two trusts initially were funded with assets of some $15,-900,000. At the institution of this proceeding there were 127 lineal descendants of the testator, some of whom are trust income beneficiaries of the 16 testamentary trusts now being administered. The value of these trusts exceeds $100,000,000 and approximately one third of this sum represents the two trusts for the benefit of Geraldine Rockefeller Dodge.
Article eleventh of the testator’s will includes a provision reading: “In case my Trustees should at any time be of the opinion that the income applicable to the use of any beneficiary, except my said wife, is more than sufficient for his or her suitable support and maintenance, I authorize and empower my said Trustees, in their absolute and uncontrolled discretion, to apply so much of the surplus income as they may think best to the use of any of my lineal descendants, in such shares and proportions, whether equal or unequal, as my said Trustees may, in their absolute and uncontrolled discretion deem advisable.”
*545 The court is asked to construe the quoted text in order to advise the trustees as to their trust duties in existing circumstances. The trustees seek instructions in respect of their obligations in the exercise of their ‘1 absolute and uncontrolled discretion ” to apply to the use of the testator’s lineal descendants that portion of the trust income which is more than sufficient for the suitable support and maintenance of G-eraldine Rockefeller Dodge. As a first query the trustees ask if they may take into consideration the income of the beneficiary which she derives from sources other than the testamentary trusts. The trustees contend that the will contemplated that the trustee should do this and as facts supporting their inclination to assume such a position, if it finds support in this court’s opinion, the trustees state that for the calendar year 1962 the trust beneficiary received total income from all sources of $1,698,000 of which more than $820,000 was tax-exempt income. Of this total income more than $835,000 was received from the trusts under the testator’s will and, of this, $373,000 was tax-exempt income.
The fact that in 1963 the income beneficiary was judicially declared incompetent has instigated the instant application for construction and instructions, although it is not apparent that the problem of discretionary payment of trust income was not, in some degree, existing from the date of the testator’s death. In fact the trustees in the past, acting with this trust beneficiary as a eotrustee, did exercise their discretion as to the income derived from certain of the testamentary trusts.
While figures as to the income of the trust beneficiary in earlier years are not before the court, it must be assumed that her independent income, regarded in the light of contemporary economic conditions, was abundant even for one in the social class to which she belonged. Viewing the data at hand, the information as to the establishment of inter vivos trusts and the financial status of the beneficiary’s husband, it is difficult to reach a conclusion that at any time the entire trust income was essential for the support and maintenance of the beneficiary. The testator, as the father and benefactor of his daughter, well knew her financial condition when he drew his will. If he then was of the opinion that his daughter’s independent income was to be taken into consideration in determining her need for support and maintenance it would seem that, in creating testamentary trusts for her support, he either was doing a futile thing by creating a meaningless trust or he was employing a cumbersome method of routing income to others whom he regarded as the true objects of his bounty but strangely identified these persons only in a general manner.
*546 In naming his daughter as a trust beneficiary the testator intended to confer a benefit upon her in the form of trust income. His will cannot be regarded as merely an insignificant gesture toward his daughter or as a direction to be operative only in the event of a financial panic but such would be the necessary interpretation of the will were the beneficiary to receive income only in the remote event that her independent means should prove inadequate for her support and maintenance.
Prior decisions, involving decedents and beneficiaries of comparatively modest means, seem to be of little assistance in this atmosphere of extreme wealth but the rulings in Rezzemini v. Brooks (236 N. Y. 184) and Matter of Clark (280 N. Y. 155) may have some pertinence. The premise here must be that the testator was not identifying support and maintenance with the necessaries of existence but, instead, was creating trusts to meet the demands of a society which to many would be sheer extravagence but to his family was an habitual way of life. If the testator intended his testamentary trusts to have any real purpose, his intention was to bequeath trust income to his daughter without regard to the extent of his prior gifts to her or her independent station in life. The testator’s language indicates his recognition of a possibility that the trust income, alone, would reach an amount beyond the demands of the most lavish living and he vested discretion in his trustees to act in such a circumstance. The conclusion of this court is that the trust was intended for the support and maintenance of the beneficiary irrespective of her income from other sources.
The trustees are concerned about the fact that among the assets of the incompetent beneficiary are a farm in New Jersey, a kennel housing some 50 dogs, a stable and an unoccupied town house in New York City. The maintenance of these assets involve the employment of a considerable number of persons, a very substantial payroll and other operational expenses. The trustees venture a suggestion that these expenses may not be wholly appropriate for the support and maintenance of an incompetent in her eighties but they seek guidance in this respect. The extent of the beneficiary’s incompetency is not particularized. The Supreme Court of New Jersey has instructed the guardian of the incompetent as to the maintenance of the kennel but, inasmuch as it appears that such advice was premised upon the welfare of the animals rather than any advantage accruing to the incompetent,, the trustees indicate that the order of the court is not of assistance to them.
This is a problem to be resolved by the trustees in the exercise of their absolute discretion and it is not the prerogative *547 of this court to assume that authority and thereby be foreclosed to hear objections to the subsequent acts of the trustees (Matter of Bernstein, 13 A D 2d 743, citing 3 Warren’s Heaton, Surrogates’ Courts [6th ed.], p. 290). The responsibility of the trustees is to determine the amount of trust income sufficient for the suitable support and maintenance of the trust beneficiary. It would seem rather obvious that in reaching any conclusion the trustees will consider not only the station in society of the beneficiary but the requirements of the beneficiary in her present circumstances including the extent to which her incompetency has altered her pre-existing requirements.
The trustees also seek a ruling as to the authority of the individual trustees to exercise this discretionary power in a manner which may be regarded as indirectly beneficial to them. Section 141 of the Real Property Law (cf. Real Property Law, § 159, eff. June 1, 1965) pertains to the distribution of trust principal and, if such a problem existed here, unquestionably the corporate trustee could exercise the power. Matter of Peabody (277 App. Div. 905) was concerned with the distribution of income and there the court did not refer to section 141 of the Real Property Law but, by undertaking the execution of the power by reason of the disqualification of the sole trustee and by directing that a corporate trustee be appointed, the court in effect adopted the rationale of that statute. There appears to be no sound basis for differentiating between the qualification of a trustee to disburse principal or to disburse income for his own benefit and it is held that this discretionary power may be exercised by the corporate trustee where a possibility of conflict of interest may exist. Such exercise by the corporate trustee would be a complete solution of the posed problem. It would seem particularly appropriate that a corporate trustee with the exceptional experience and capabilities which trust corporations attribute to themselves in their advertising should assume this responsibility. In view of the trustees ’ statement that they have no intention of disbursing income to themselves and the fact that the corporate trustee has authority to exercise its absolute discretion, there is no occasion for this court to consider the formulation of a rule of law that blood relationship necessarily creates a conflict of interest in this situation.