OPINION OF THE COURT
Kristin Booth Glen, S.
Paul C. Benko, administrator c.t.a. of the estate of Ruth V Cardoso, and petitioner in a turnover proceeding against Citicorp Investment Services (CIS), Wolfgang Roddewig, John J. Reddy, Jr. (Reddy), and Bekerman & Reddy, EC., counsel to the Public Administrator of the County of New York, now seeks summary judgment and treble damages. CIS cross-moves for summary judgment, seeking dismissal of the turnover petition and revocation of petitioner’s letters of administration c.t.a. A motion for summary judgment may be granted only if the allegations, viewed in a light most favorable to respondent(s), fail to raise a triable issue of fact (Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 401 [2006, Rosenblatt, J., dissenting]).
Decedent, a domiciliary of Brazil, died February 11, 2000, survived by no known distributee. On June 27, 2002, Benko proffered decedent’s one-page handwritten will dated July 25, 1998. The will bequeaths decedent’s “holdings at the Citibank in New York” to Benko.
During the pendency of Benko’s probate proceeding, Roddewig obtained probate in Brazil of a later will, dated March 12, 1999. On March 11, 2003, the Brazilian State of Bahia, Judiciary Power, 1st Family, Successions & Orphans Court appointed Roddewig executor of decedent’s March 12, 1999 will. Article first (of a certified translation of a court certified copy) of that later will provides: “That this was the only and exclusive testament, and any previous act was hereby revoked.”
Thereafter, CIS, presented with certified translations of: (1) decedent’s death certificate; (2) the March 11, 2003 certificate issued by the Brazilian State of Bahia, Judiciary Power, 1st Family, Successions & Orphans Court to Roddewig, as executor of decedent’s March 12, 1999 will; and (3) the March 12, 1999 will itself, transferred decedent’s investment account, which Benko estimates at $70,000 to Roddewig, as executor of decedent’s will.[1]
On July 12, 2004, this court — unaware of the probate of a later will — probated the earlier July 25, 1998 will proffered by *1010 Benko, and on July 14, 2004, issued to him letters of administration c.t.a.
On October 8, 2004, Benko filed a petition for the turnover of property belonging to decedent’s estate.
First, Benko claims CIS (which already had turned over to Benko the checking account of which he and decedent were joint tenants, and which was on notice of the pendency of his probate proceeding), lacked authority to choose between Benko’s and Roddewig’s competing claims, and improperly transferred decedent’s investment account to Roddewig.
EPTL 13-3.4 prescribes the circumstances under which an institution may, without a court order, turn over to a foreign fiduciary personal property belonging to the estate of a nondomiciliary.[2] At the time CIS transferred decedent’s account to Roddewig: (1) Roddewig was authorized by the foreign jurisdiction in which decedent was domiciled to receive decedent’s personal property; (2) Benko had not yet been appointed administrator c.t.a., and therefore could furnish no written notice of his fiduciary appointment; (3) CIS evidently had not received written notice of the existence of any New York creditor; and (4) CIS had no reason to believe Roddewig, or the persons he represented, would not get the benefit of the property. Accordingly, CIS is availed of the protections of EPTL 13-3.4.
Second, Benko challenges the validity of the March 12, 1999 Brazilian will. He claims the certified copy of the document *1011 written in Portuguese and furnished by CIS is not a will, because it is signed by an individual other than decedent. He suggests the translation furnished by CIS is not a translation of decedent’s Brazilian will, because it is date stamped March 6, 2003, more than three years after decedent’s death. (He also speculates “the original document would have to be in German, because German was the primary language of Ruth Cardoso.”) In the alternative, Benko, noting the recitation in the Brazilian will that decedent was “sick in bed at her home,” suggests decedent was “too weak and sick, on the verge of death, and therefore unable to sign the will,” and questions decedent’s competence. Benko thus attacks both the genuineness of the will and decedent’s testamentary capacity.
A photocopy of the certified translation provides in its text: “Signed by: RUTH VOLKL CARDOSO,” and indicates the document being translated was, itself, signed by a notary public. Further, counsel for CIS, in oral argument on the return date of the motions for summary judgment, confirmed the Portuguese document is a photocopy of a court-certified version of the Brazilian will, and that the original will, signed by decedent, remains on file in the Brazilian court. At any rate, a challenge to the validity of the March 12, 1999 Brazilian will may be mounted only in the court that gave it effect.[3]
Third, Benko argues he and decedent considered the CIS investment account a joint account, contributing to it equally. Benko, however, has tendered no evidence the account was in the form of a joint account. Thus Benko has failed to meet his burden of establishing the existence of a joint account (see Banking Law § 675).
Fourth, Benko claims decedent (who moved to Brazil as an adult and for whom Portuguese was a third language) was not completely fluent in Portuguese, and — despite the clarity of her testamentary expression — intended the Brazilian will to govern only property situated in Brazil. Contending decedent did not intend to revoke the New York will, Benko asks the court to consider evidence extrinsic to the wills to ascertain decedent’s *1012 actual intent. Benko alleges: “She [decedent] often told me that the people in Brazil did not even know about her bank accounts in New York. One reason for this is she felt that there are legal restrictions to a Brazilian having foreign bank accounts.” He also alleges decedent told him: “No one knows about this money, only me. So no one else can touch it.” Further, Benko asserts:
“Citibank has two branch offices in Salvador[,] Brazil. Ruth Cardoso had a bank account with the Citibank office in Salvador, Brazil. There was only an insignificant amount of money in that account for several reasons, one being that due to hyperinflation in Brazil any funds held in that country are often wiped out by inflation.”
Extrinsic evidence of a testator’s intent is inadmissible to vary or contradict the clear and unambiguous terms of a will (Matter of Cord, 58 NY2d 539, 544 [1983], rearg denied 60 NY2d 586 [1983]; Matter of Wickwire, 270 AD2d 659, 661, 662 [3d Dept 2000], Iv dismissed in part, denied in part 95 NY2d 824 [2000]; see Matter of Bieley, 91 NY2d 520, 526 n 2 [1998]; Matter of Walker, 64 NY2d 354, 358 [1985]). That is, the probable intent of a testator, indicated by extrinsic evidence, may not prevail over the plain meaning of the will, unless the language of the will, itself, is adequate to express such intent (Matter of Smith, 254 NY 283, 289, 290 [1930]). The standard for admissibility, therefore, is two-pronged: not only must extrinsic evidence demonstrate that a literal reading of the will does not express testator’s intent, but testator’s actual words must be susceptible to the interpretation gleaned from the extrinsic evidence (id.; Matter of Jolson, 202 Misc 907, 911 [Sur Ct, NY County 1952]).
Here, decedent’s Brazilian will states it is decedent’s “only and exclusive testament, and any previous act was hereby revoked.” Revoking all prior wills, it identifies itself as decedent’s sole and exclusive testament. There is no language in the earlier New York instrument susceptible to an interpretation that decedent intended for the New York will to survive, and not to be superceded by, the Brazilian will (cf. Matter of Smith, 254 NY 283 [1930], supra). Any “purported misapprehension of decedent” as to the effect of instruments she signed disposing of her New York assets, therefore, does not “suffice to create ambiguity where none otherwise exists” (Matter of Duke, NYLJ, July 15, 1997, at 26, col 6, at 27, col 1 [Sur Ct, NY County, Preminger, S.]). Accordingly, the court may not consider extrinsic evidence to alter the plain meaning of the instruments.
*1013 Finally, Benko’s claim that he was harmed by a delay by Reddy, of Bekerman & Reddy, EC., in rendering a report on behalf of the Public Administrator,[4] is denied. Benko contends that, had Reddy furnished his report in a more timely fashion, the court could have issued letters to Benko before Roddewig had an opportunity to claim decedent’s CIS account. However, Reddy and Bekerman & Reddy, PC. bear no responsibility for the fact that the will proffered by Benko was not probated first; indeed, probate of the later will preceded even the completion of jurisdiction in Benko’s proceeding. More important, the order in which the wills were admitted to probate does not affect the validity or invalidity of the earlier will. Probate of the later will, with its explicit revocation of any prior will, invalidates the earlier will.
CIS lacks standing to seek revocation of Benko’s letters of administration c.t.a. (see SCPA 711). The court, however, sua sponte, may revoke letters issued under an instrument which has been declared invalid by another court (SCPA 719 [4]). In addition, the court has inherent power to set aside its decree in the administration of justice (Sipperly v Baucus, 24 NY 46 [1861]; see Matter of Pierpont Morgan Library, NYLJ, Nov. 10, 2005, at 26, col 3).
The July 25, 1998 instrument having been invalidated by probate of a later will, this court concludes that the decree— rendered by Surrogate Renee R. Roth — admitting to probate the July 25, 1998 instrument should be vacated, and letters of administration c.t.a. issued thereunder to Benko should be revoked. Accordingly, the issue of vacatur is respectfully referred to Surrogate Renee R. Roth, Benko’s motion for summary judgment is denied, and CIS’s cross motion for summary judgment is granted to the extent it seeks dismissal of the turnover proceeding. This court notes the vacating of the probate decree is without prejudice to renewal, should the Brazilian State of Bahia, Judiciary Power, 1st Family, Successions & Orphans Court invalidate or reform decedent’s March 12, 1999 will.

. The date of the transfer is in dispute; however, the disparity is immaterial: the parties agree the transfer occurred after Roddewig’s fiduciary appointment in March 2003 and before Benko’s fiduciary appointment in July 2004.

. EPTL 13-3.4 provides:
“(a) Whenever any foreign fiduciary, by whatever title he is designated, of the . . . estate of a non-domiciliary . . . decedent is authorized, by the laws of the foreign jurisdiction where the . . . decedent was domiciled, to receive any personal property in the possession or control of any person or fiduciary in this state, such person or fiduciary may pay or deliver the property to such foreign fiduciary without an order of the court, and the receipt and acquittance from such foreign fiduciary is a sufficient release and discharge of the person or fiduciary paying or delivering such property. . . .
“(b) No person or fiduciary shall be released and discharged, as provided in paragraph (a), who:
“(1) Has received written notice of the appointment, in this state, of a principal or ancillary representative of the property or estate, or of the existence of creditors, in this state, of such . . . decedent.
“(2) In the case of a testamentary disposition . . . of a decedent’s estate, has reason to believe that such foreign fiduciary or the persons whom he represents would not have the benefit, use or control of such disposition or distributive share.”

. The Court of Appeals has noted, in dicta: when the will of a foreigner who dies owning personal property both at home and abroad “has already been probated in the foreign country[,] it may not be proved in an independent proceeding here” (Matter of Turton, 8 NY2d 311, 315 [1960] [citations omitted]). By analogy, once the will of a nondomiciliary, who left property here and in her domicile, has been probated in her domicile, such will may not be disproved in an independent proceeding here.

. In a proceeding to probate the will of a decedent survived by no known distributee, the Public Administrator is cited (see SCPA 1123 [2] [i] [2]; 1215 [1] [b]) along with the Attorney General (SCPA 316) and, in New York County, expected to file a report.