In the Matter of the Estate of HENRY B. BILLINGS, Deceased.

Surrogate's Court, Clinton County, June 20, 1931.

*George K. Large* [*John A. Slade* of counsel], for the petitioner Mae Taylor Higgins.

*Patrick J. Tierney*, for the sole executor, Chester Billings.

HARRINGTON, S. Decedent's will was construed by this court on August 6, 1930. (See *Matter of Billings*, 137 Misc. 758.) Thereafter an application was made to reopen the proceeding and allow a new hearing on the ground of newly-discovered evidence and the application was granted. (See *Matter of Billings*, 139 Misc. 496.) The nature of the alleged newly-discovered evidence was discussed in the latter decision.

Upon this hearing, counsel for the petitioner offered in evidence Exhibit No. 2, a memorandum prepared in the handwriting of Colonel Herrick, a friend of the decedent, which Colonel Herrick testified was dictated to him by the decedent as a proposed will. This occurred on August 25, 1928, two days prior to the execution of decedent's will, which has been admitted to probate by this court. Colonel Herrick immediately made a typewritten copy of the same, to be referred to as Exhibit No. 1. He testified that he then compared these two papers with Mr. Dennis LaMarche. Mr. LaMarche testified that he did not believe they were so compared. There is some basis for this conflict of testimony for it is a fact that Exhibit No. 1 contains a legacy of $50,000 to John Kopka not contained in Exhibit No. 2. Colonel Herrick then delivered the typewritten copy to decedent's son, Mr. Chester Billings, and the same was signed by the decedent and his signature witnessed by Mr. LaMarche. Colonel Herrick testified that at the time he compared the two copies in the presence of the decedent, the decedent said he was going to have his will drawn by his lawyer. Mr. LaMarche testified that the decedent declared Exhibit No. 1 to be his will at the time he signed it.

Mr. Tierney, the draftsman of the will, testified that on August 27, 1928, he went to Mr. Billings' residence and had a conference with him, returned to his office and drafted the will, then took Mr. LaMarche and went back to decedent's residence to have the will executed. He also testified that Exhibit No. 1 was handed to him by the decedent at the time of his conference relative to the

drafting of the will, but that he also had " facts for preparation of will from conversation with Mr. Billings in the morning." Counsel for the petitioner failed to question Mr. Tierney as to what these " facts " were and Mr. Tierney did not volunteer any information with respect to the nature of the same. It is a fact, however, that there are several provisions in the will admitted to probate which are not to be found in either petitioner's Exhibit No. 1 or No. 2, so that it is quite apparent that at the time Mr. Tierney drafted decedent's will, the decedent did have other and further ideas with reference to the same than he did at the time petitioner's Exhibits Nos. 1 and 2 were prepared. It is also a fact that paragraph " eighth " of decedent's will, by which he created a trust fund of $100,000 with the income payable to Mrs. Herrick and her husband, Colonel Herrick, during the lifetime of Mrs. Herrick, with the remainder to the daughter of Mrs. Herrick, is not the same as a similar provision in Exhibit No. 2 for the same parties. In the latter case the principal of the trust fund does not vest in the daughter of Mrs. Herrick until after the decease of Colonel Herrick. It is, therefore, quite apparent that the contents of decedent's will is unlike that of Exhibit No. 2 in many respects. Upon cross-examination, Colonel Herrick admitted that the decedent in the presence of himself and Mr. Tierney had said that there was a memorandum in decedent's office in New York city concerning the jewelry and who was to receive it. Mr. Tierney testified that this memorandum could not be found by the executor.

Upon the application to reopen this proceeding, I held that the memoranda constituting petitioner's Exhibits Nos. 1 and 2, as herein mentioned, were admissible for the purpose of attempting to rebut the resulting trust implied by this court in its previous decision in the absence of any evidence as to testator's intention. (See *Mann* v. *Executors of Mann*, 1 Johns. Ch. 231; cited with approval in *Reynolds* v. *Robinson*, 82 N. Y. 103, 106; 2 Schouler Wills, Executors & Administrators [6th ed.], § 917.) When the language of the will does not disclose a latent or patent ambiguity or a resulting trust, then the law is settled that extrinsic evidence is not admissible to show the testator's intention. I am still of the opinion that such evidence is competent for such purpose. (See *Matter of Smith*, 254 N. Y. 283, 289.) I am also of the opinion that the other circumstances in connection with the matter as herein mentioned are such that the construction of decedent's will, as heretofore made by this court, should not be disturbed. At the time petitioner's Exhibit No. 1 was executed he stated that he was going to have his will drawn by his attorney. He did so. This would imply that decedent did not intend that

Exhibit No. 1 should be his will if he could have the opportunity to have one prepared by his attorney While it has not been made clear to the court what " facts " decedent gave to his counsel as a guide to the preparation of his will, we do know that he did give him petitioner's Exhibit No. 1, and that he must have given him the necessary information regarding other legacies not mentioned in petitioner's Exhibit No. 1, but included in the will prepared by his attorney. Whether decedent discussed with his attorney the language to be used in paragraph " sixth," we are not advised. We do know that decedent had previously told both his attorney and his friend, Colonel Herrick, that he had a blue paper in his office in New York city directing how the jewelry should be disposed of. It may, of course, be argued that if such a memorandum existed it might be a mere expression of a desire as to how the same should be distributed and not a direction to his executor or to Mae Taylor Higgins as to how it should be distributed. Of this, however, we cannot be certain. The fact that the draftsman of the will did not voluntarily testify to all of the conversation had with the decedent relative to his instructions for the preparation of decedent's will cannot be construed unfavorably. Mr. Tierney was called as a witness by the counsel for the petitioner and if such counsel desired to examine in detail the matter of this conference he at least had the right to ask the questions and Mr. Tierney, being a witness to the will, had the right to answer the same. If the questions were not asked, no unfavorable construction should be implied by reason of Mr. Tierney's failure to amplify the matter.

When this application to reopen this hearing was granted, this court did not have knowledge of all the testimony that was to be offered in the matter. There is nothing in the testimony offered to indicate that the testator did not mean to use the language which he did use in paragraph " sixth " of the will, and for all that appears n the testimony, it may have been the direct language used by the testator. The very fact that the testator told his counsel and Colonel Herrick that there was a blue paper showing the disposition of the jewelry bears out the construction placed upon paragraph " sixth " of the will that it was not decedent's intent that the articles therein mentioned should be distributed as to Mae Taylor Higgins might seem proper. Such testimony indicates more clearly than ever to the court that there was a belief in decedent's mind that the ultimate legatees of this jewelry, at least, either were or would be definitely known to Mae Taylor Higgins. For all of these reasons, I am of the opinion that the construction of paragraph " sixth " of decedent's will by this court should not be disturbed.

Counsel for petitioner offered evidence of declarations of the testator made after the execution of the will, for the purpose of showing testator's intent as to the meaning of paragraph "sixth." Such testimony was taken under objection and subject to being stricken out if found incompetent.

Colonel Herrick testified that within five days from the date of decedent's will the decedent told him the names of two persons whom he desired to have certain pieces of jewelry. Colonel Herrick also testified that within two days from the execution of the will he heard the testator tell Mae Taylor Higgins " to go upstairs and distribute Mrs. Billings' clothing; " he said Mrs. Higgins did distribute some of this clothing and kept some for herself.

Mrs. Higgins was asked to testify concerning the same matters but her testimony was not allowed for the reason that she is an interested party. Her husband, William F. Higgins, testified that within two days from the execution of the decedent's will, the decedent said to Mrs. Higgins " go right up stairs and do whatever you care to with Mrs. Billings' clothing; " that she did distribute some of it and took part of it for her own use; he also testified that the testator told him he was leaving all the jewelry to Mrs. Higgins; that he would like Mrs. Scott to have the pearl necklace.

The only basis for allowing any of the evidence presented by the petitioner herein, whether before or after the date of the will, is upon the theory that such extrinsic evidence is admissible for the purpose of attempting to rebut the resulting trust which this court has construed exists in paragraph "sixth." On this basis, I believe that evidence of these transactions occurring within such a short time after the execution of the will is as admissible as the evidence relating to the preparation and execution of petitioner's Exhibit No. 1, for the purpose of showing all the surrounding circumstances in connection with the matters under consideration. (See 3 Jones Ev. § 481, wherein the author in discussing the admissibility of declarations of the testator states as follows: " The earlier cases intimated that declarations by the testator were not admissible in any event, unless *contemporaneous* with the execution of the will. But the later cases have rejected this distinction; and although contemporaneous declarations may be entitled to greater weight than those made before or after, they are admissible in evidence on the same principle.")

There are numerous cases, including those cited by counsel for the executor, that declarations of a testator after the execution of his will are not competent in a proceeding of this nature. But an examination of these cases will disclose the fact that there was

not a latent or patent ambiguity or a resulting trust. They are, therefore, not in point with this case.

However, it must be kept in mind that Mr. Higgins is the husband of Mae Taylor Higgins, the person mentioned in paragraph " sixth " of the will. While his testimony is competent, it cannot receive the same force as that of a disinterested witness. While Colonel Herrick testified to a similar conversation with the testator, it should be noted that it was to " distribute " the dresses, not as Mr. Higgins testified " do as she wanted to with them; " he also testified to a conversation with the decedent relative to the existence of a blue paper, as herein mentioned, which presumably was a memorandum giving the names of the persons who should receive the jewelry. It is also significant that none of the jewelry was distributed by the decedent or by Mae Taylor Higgins during this period. The fact that some of the dresses were distributed by Mae Taylor Higgins during the lifetime of the decedent and under his direction would not seem to warrant the conclusion that the language of paragraph " sixth " of the will was intended by the decedent to constitute a gift of the articles therein mentioned to Mae Taylor Higgins, with a discretion on her part to distribute the same as she might think best. I am, therefore, of the opinion that even though this evidence of declarations of the testator after the date of his will is admitted, the nature of the same, in view of the other matters herein mentioned, is not such as to warrant any different construction as to the meaning of paragraph " sixth " than that already given by this court in its previous decision.

The motion of the counsel for the executor to strike ·out all testimony as to conversation, actions and doings in the presence of Mr. Billings after the execution of the will; the testimony of Mae Taylor Higgins as to residence and residence of Mrs. Billings and relations of parties; the testimony of William F. Higgins as to conversation with decedent after the execution of the will, and the testimony of Colonel Herrick with reference to conversations with the testator in regard to the preparation and execution of Exhibits Nos. 1 and 2 is denied.

Settle decision and prepare decree upon five days' notice.