## In the Matter of the Estate of JOSEPHINE V. BLODGETT, Deceased.

Supreme Court, Erie County, June 7, 1938.

*Edward N. Mills* and *Carlos C. Alden,* for the trustee.

*Benjamin E. Shove* and *Harold M. Weisenberg,* for the remaindermen.

HARRY L. TAYLOR, Official Referee. In this accounting proceeding, referred to me to " hear, try and report," I have thought it advisable to pass upon the competency of certain proffered testimony before counsel brief the main issues.

The testatrix executed a codicil to her will reading as follows:

" *First.* Whereas, by the provisions of paragraph ' Thirteenth ' of my said last will and testament, I directed my trustee to pay to each of my children, Gertrude H. Blodgett and Harry C. Blodgett, the income from the certain trusts therein created; and whereas, by the provisions of paragraph ' Fifteenth ' of my said last will and testament I empowered my said trustee to make payments to my said children from the corpus of the said trusts not to exceed

Five Thousand Dollars ($5,000.00) to each child in any one year: Now, I do hereby authorize and empower my said trustee to pay out from the corpus of the said trust a further sum of Five Thousand Dollars ($5,000.00) each year to each of my said children, such payments to be subject to the limitation contained in the said paragraph ' Fifteenth ' of my said last will and testament that such payments shall not reduce the corpus of each trust below a total value of One Hundred Twenty Five Thousand Dollars ($125,000.00)."

Previously she had provided in subdivisions (a) and (b) of paragraph thirteenth of the will for an income for life for each of her two children. Subdivision (e) of paragraph fifteenth of the will reads as follows:

" (e) If in any year the income payable under the terms of each of subdivisions (a) and (b) of paragraph ' Thirteenth ' of this my last will and testament shall be less than Fifteen Thousand Dollars ($15,000.00), then and in that event my said trustee shall have power and authority in his sole discretion to pay out from the corpus or principal such sum or sums as will, when added to such income, make a total equal to the aforesaid amount but not to exceed in any case Five Thousand Dollars ($5,000.00) to each of my children in any one year; provided, however, that such payments of corpus or principal shall not be made when and to the extent that to make them would reduce the corpus then held in trust under each of said subdivisions (a) and (b) of said paragraph ' Thirteenth ' below a total value of One Hundred Twenty-five Thousand Dollars ($125,000.00)."

I have permitted the scrivener of the will to testify, in substance, that intermediate the execution of the will and the codicil, the testatrix stated to him that she had changed her mind, that she desired each of her children to have an income of $20,000 instead of $15,000 per year and desired to execute a codicil so providing; that the testatrix furnished her attorneys with a detailed statement of her assets and her income; that she requested her attorneys to make investigations and report back to her whether or not her estate would probably produce $20,000 income annually for each of the children; that thereafter, she being advised that the larger amount could safely be withdrawn annually from the corpus of her estate, the testatrix executed the codicil to accomplish the purpose mentioned. Was this testimony as to declarations of the testatrix competent?

It is a general rule of substantive law that when the ideas, the volition, the acts of a person become integrated in a will or in any contract, a single memorial, all other utterances of the party as

to intent or will or wish are legally immaterial; they have no jural effect. The courts of this State have also said that a "patent ambiguity" appearing in a will must be cleared up by construction and that in such instances, testimony as to declarations of the testatrix may not be resorted to to make the meaning clear; while in cases of "latent" ambiguity such resort may be had. (*Mann* v. *Mann*, 14 Johns. 1; *Brown* v. *Quintard*, 177 N. Y. 75, 83.)

A patent ambiguity arises from uncertainty of language or vagueness of description. A latent ambiguity arises when the words used are neither ambiguous nor obscure but ambiguity appears relative to persons or things meant. For a simple example, if a devise in a will were made to John Smith and there were two persons of that name or if property on the thoroughfare called "Delaware" were devised and there was a Delaware "Street" and a Delaware "Avenue," in each of those cases, a latent ambiguity would be present and oral proof would be admissible to show which person or thoroughfare was intended; while in a case where two portions of a will are clearly repugnant, a case of patent ambiguity would be presented. However, all obscurities in wills cannot be scheduled accurately and definitely in a latent or patent class and the modern rule which fits what may possibly be called intermediate or borderline cases is that when language which is plain and clear, so far as word meanings are concerned, becomes of uncertain import when viewed in the light of surrounding facts and circumstances, extrinsic evidence may be presented to clear up the doubt. (See cases cited in 94 A. L. R. 52–54, 57–64.) In *Matter of Fowles* (95 Misc. 48; revd., 176 App. Div. 637; revd., 222 N. Y. 222) the court goes so far as to say (p. 51): "If a patent ambiguity may be obviated by extrinsic evidence it is now admitted by the best authority to afford a third exception to the rule excluding such extrinsic evidence. The only patent ambiguity which may not be so explained is one incapable of resolution." In *Peisch* v. *Dickson* (1 Mason, 9) Justice STORY makes the following statement: "There seems indeed to be an intermediate class of cases, partaking of the nature both of patent and latent ambiguities; and that is, where the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter, in the contemplation of the parties." The courts, in some of our States, have gone so far as to declare that there should be no distinction whatever between latent and patent ambiguities with respect to admitting extrinsic evidence. "The distinction between latent and patent ambiguities is now practically ignored and disregarded; and the courts, without regard to the distinction, endeavor to arrive by the

most direct way at what the testator meant when he wrote the will." (*Haupt* v. *Michaelis*, [Tex. App.] 231 S. W. 706.) "The distinction between latent and patent ambiguities, when examined, is wholly unphilosophical, and founded upon a scholastic quibble of Lord Bacon." (*Armistead* v. *Armistead*, 32 Ga. 597.) But looking elsewhere for light — in New York cases and in the works of text writers — in *Matter of Smith* (254 N. Y. 283, at p. 289) Judge KELLOGG says: "The probable intention of the writer, as indicated by extrinsic facts, may not prevail over the plain meaning of the written word, nor have any force whatever, unless the words incorporated in the writing are susceptible of a meaning which expresses the intent thus disclosed." Then this: "It is the modern rule that 'with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence,' can be shut out." What is meant by "direct statements of intention" which are excepted?

Mrs. Blodgett provided in her will that each of her two children should have an income of $15,000 per year; that the corpus of each trust might be invaded to the amount of $5,000 annually to guarantee such income; but that neither corpus could be thereby reduced to less than $125,000. She soon told her attorneys that she had changed her mind; that she wanted each child to have $20,000 per year, that each child be given $5,000 more annually from the corpus of her estate; still providing, however, that each estate must remain as great as $125,000. As I look at it, I have this situation before me: It cannot be denied that when Mrs. Blodgett made clear to her attorneys how she had changed her mind and what she wanted done, she "expressed an intention." That intention initially must be derived, if possible, from the words she used in the codicil; for, from the writing alone as formally executed — not from oral, informal expressions of pre-resolution, of volition, of desire — must the testamentary announcement be derived. But when the signification of the language used is obscure, even though the words themselves be of plain meaning, when construction becomes unsatisfying, then an ambiguity is presented which should be solved, if possible, by ascertaining what the "sense" of the language is, not what the "volition" of the testatrix was (to use Professor Wigmore's words) by resorting to testimony indicating what the testatrix meant by the language employed — indicating what she said, not what she intended to say. The prohibiting rule with reference to "expressions of intention" is as to the volition to utter. The permitting rule is as to the interpretation of what has been uttered, *i. e.*, as to what is the meaning of the words used. (5 Wigmore on Evidence [2d ed.], § 2459.)

To amplify my thought further at the risk of restatement, the codicil in terms authorized the trustee to pay to each child annually " a further sum of $5,000 " subject to the limitation in paragraph fifteenth relative to not reducing either corpus below $125,000. No other limitation contained in paragraph fifteenth is mentioned, the testatrix simply referring to the fact that she had, by paragraph fifteenth, empowered the trustee to pay from each corpus $5,000 annually toward income.

These declarations of the testatrix are not as to " intentions of the testator not found in the will " nor are they in contradiction of what is there found. They make clear what the testatrix has said and not her secret desire. While the law is " concerned with intentions as shown in words, and not at all with any intentions which have failed in expression through omission or mistake. * * * Obscurity, moreover, is not always the same as omission, and while a testator's meaning may be hard to understand from the words alone, it may become easily apparent in the light of the surrounding circumstances." (*Chase Nat. Bank* v. *Chicago Title & Trust Co.*, 164 Misc. 508; affd., 246 App. Div. 201; affd., 271 N. Y. 602.) The effect of these declarations " is not to establish an intention different in essence from that expressed in the will, but to let in light by which that intention, rendered obscure by outside circumstances, may be more clearly discerned, and the will of the testator in its entire scope effectuated according to his true intent and meaning." (*Willard* v. *Darrah*, 168 Mo. 660; 68 S. W. 1023.)

Declarations of intention are receivable nowadays to assist in interpreting an equivocation (Wigmore, *supra*, § 2472), that is, language which, upon application to external objects, is found to fit two or more equally. The language of this codicil, when considered with that of the will, while it does not equally apply to " two external objects," does point to two equally reasonable conclusions. Why is not the principle the same?

Of course, I do not assume to criticize the construction of the codicil adopted by the surrogate and the Appellate Division as the codicil and will were presented to them. But, after considering the cases cited by counsel for the remaindermen to the general effect that declarations of a testator may not be received in evidence to show testamentary intention, I reach the conclusion that the codicil is so reasonably susceptible of the construction adopted and acted upon by the trustee, who paid each child $20,000 per year, that under the " modern rule," the declarations of this testatrix as reported by the scrivener of the will should be received in evidence — not as alterations of the testamentary writings, not in competition with them, not to show volition preliminary to or

cotemporaneous with the execution of the codicil, but to show which of two " senses " was the object of the testatrix when she used the language employed — to elucidate the particular intendment of a group of words carrying more than one reasonable meaning, a group which must be considered in connection with another document and with surrounding circumstances of material importance, to clear up an ambiguity which could not otherwise be removed.

If the ambiguity be not technically " latent," I deem it to be sufficiently in that category to warrant my having received the testimony. For, after all, the true purpose of the testatrix in executing the codicil is what we are seeking to discover. The purport of the language employed by the scrivener is not clear; considered with paragraphs thirteenth and fifteenth of the will, as it must be, it is capable of two reasonable meanings; the testimony accepted does no violence to the body of the codicil as written; it does not add or subtract or substitute any words; if believed it simply makes clear what was obscure; it gives a definite accurate, single meaning to that which was ambiguous; and it indicates solicitude for the natural objects of Mrs. Blodgett's bounty. I am not dealing with the weight of this testimony now but with its competency. And to my mind, a ruling that it is inadmissible, even if not founded upon a " scholastic quibble," is not required by latter day authority.

I find and rule that the testimony of the scrivener should remain in evidence and should be considered in construing the codicil.