In the Matter of the Construction of the Will of AL JOLSON, Deceased.

Surrogate's Court, New York County, May 16, 1952.

*Ferdinand Pecora* and *Herbert P. Jacoby* for Irving Trust Company and another, as executors of Al Jolson, deceased, petitioners.

*Siegfried F. Hartman* for Federation of Jewish Philanthropies of New York, respondent.

*George A. Timone* for Catholic Charities of the Archdiocese of New York, respondent.

*Gillespie & O'Connor* for Society of St. Vincent de Paul in the City of New York, respondent.

*Robert L. Hoguet* for St. Vincent de Paul Institute, respondent.

*William A. Kirk* for Orphans Home & Asylum of the Protestant Episcopal Church and Leake & Watts Children's Home, Inc., respondent.

*White & Case* for American National Red Cross, respondent.

*Henry J. Kennedy* for Trustees of Columbia University in the City of New York, respondent.

*Winthrop A. Short* for New York University, respondent.

*Root, Ballantine, Harlan, Bushby & Palmer* for Memorial Center for Cancer and Allied Diseases, respondent.

*Nathaniel L. Goldstein, Attorney-General (Kenneth D. Shearer* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

*Daniel J. Madigan* for Erle Jolson, individually and as general guardian of Asa Jolson, respondent.

*Denis M. Hurley, Corporation Counsel (John F. Kelly* of counsel), for Board of Higher Education of City of New York, respondent.

*Abraham Lillienthal* for Alumni Association of the City College of the College of the City of New York, Inc., respondent.

*Joseph A. Macchia,* special guardian for Asa Jolson, an infant, respondent.

FRANKENTHALER, S. This is a proceeding for judicial construction of the eleventh article of the will, which disposes of the residuary estate to eighteen charitable institutions. Questions have arisen respecting the identity of certain of the legatees or the manner of executing the charitable gifts.

(1) The legatee described as " Society of St. Vincent de Paul — Orphan Asylum " has been identified as St. Vincent de Paul Institute and the court holds that the legacy is payable to it.

(2) The court further holds that the gift to " Orphans Home & Asylum of the Protestant Episcopal Church " is payable to The Leake and Watts Children's Home (Incorporated), the institution with which the named legatee has been consolidated. (Membership Corporations Law, § 51.)

(3) The legacies to " Columbia University — Fund for Needy Students " and " New York University — Fund for Needy Students " are directed to be paid to the respective corporate parents and are to be used for the charitable purposes specified by the testator. (*Kernochan* v. *Farmers' Loan & Trust Co.,* 187 App. Div. 668, affd. 227 N. Y. 658; *Prudential Ins. Co.* v. *New York Guild for Jewish Blind,* 252 App. Div. 493, 494.)

(4) There is dispute with respect to the administration of the gift to " College of the City of New York — Fund for Needy Students ". Those words are claimed to refer, on the one hand, to the board of higher education of the City of New York as the corporation controlling and administering four separate units or colleges under the corporate title, College of the City of New York, and, on the other hand, to the particular unit or college that for many years bore that corporate title but which now bears the name, City College. It is conceded that in any event the board of higher education is the corporate entity to receive and administer the fund. The question is whether the corporate parent may use the moneys for students attending Hunter College, Queens College, Brooklyn College and City College, or whether it must confine the fund to those attending the last named institution. Though a corporate charity is not a trustee in the strict legal sense, it must nevertheless use the funds in accordance with the directions of the testator and the conditions and restrictions imposed by him (*St. Joseph's Hosp.* v. *Bennett,* 281 N. Y. 115). We come, therefore, to the question of the meaning of the text of this will and to the restrictions, if any, intended to be placed upon this gift.

The history of City College began when it was established in 1847 as Free Academy of the City of New York. It later became a separate and distinct body corporate under the name " The College of the city of New York " (L. 1866, ch. 264). Under that legal title it continued as a separate entity for more than sixty years. By virtue of legislation enacted in 1926, the board of higher education of the City of New York was constituted a separate and distinct body corporate under the title " college of the city of New York ", with power to control and administer that part of the public school system

within the city of collegiate grade. (L. 1926, ch. 407, § 1, as amd. by L. 1935, ch. 873; Education Law, § 6202.) Each unit of the college was to be given "an appropriate and distinctive designation". A period of three years was fixed for control to pass from the individual boards of trustees to the new corporate administrator (L. 1926, ch. 407). Accordingly in 1929 the board of higher education assumed control of the two colleges which theretofore had separate corporate existence under the names, Hunter College and the College of the City of New York. The former retained its name. To the college which had so long borne the name now bestowed upon the board, was assigned the title, The City College of the College of the City of New York. Two additional units have since been added to the city collegiate system, Queens College and Brooklyn College.

The last will of this testator was made in 1949. The will was thus made long after the legal modification of the corporate structures and titles. Though the stroke of a pen may change legal status and title overnight, it seems that public recognition and acceptance of such changes comes from a much slower process and often one that is never quite complete. The executors have submitted extrinsic evidence which shows the persistence of use of the old title of the institution which became more familiarly known as "C.C.N.Y." That evidence consists of testator's instructions to the draftsman of the will, conversations between the draftsman and the testator and other oral as well as written evidence of continued popular use of the old name. The board of higher education moves to strike out all extrinsic evidence because it contends that, its corporate title being exactly that designated in the will, there is no such ambiguity as will permit recourse to extrinsic evidence.

It is well settled that where there is equivocation in a will as to the object of a gift, extrinsic evidence is admissible to identify the object. (*Matter of Smith,* 254 N. Y. 283, 290; *Matter of Hertzig,* 177 Misc. 598; 4 Page on Wills, § 1625, p. 669; 9 Wigmore on Evidence [3d ed.], § 2472.) There is equivocation when the text of the will can fairly be read as referring to either of two objects. Inquiry into testamentary intent is not barred merely because the proper name or corporate title of only one of the claimants corresponds exactly to the words of the will. (*Matter of Miller,* 104 Misc. 651; *Baumann* v. *Steingester,* 213 N. Y. 328.) On the one hand, the board of higher education can point to a statute which gives it legal status and a new title. On the other hand, the corporate title of the

separate college was for more than half a century precisely that used in the will, and deep sentiments and loyalties, as well as inveterate habit and material tokens, tend to keep alive the old name. Very significantly, recognition of the tendency to refer to the old college by the old title appears in the printed college bulletins, for while each of the other three colleges retains its distinctive name with no reference to " College of the City of New York," the City College publication contains that title first and foremost. Moreover, the separate institutions correspond more to the popular idea of " college " than does the board of higher education operating as a body corporate. Thus the initial glance at both description and objects causes such doubt respecting decedent's intention as to require further proof of the surrounding circumstances and extrinsic facts.

All of the evidence submitted at the hearing points very clearly to the separate institution, City College, as the particular beneficiary intended by decedent. This is not a case where a supposed intention of a testator is permitted to prevail over the written words in his will. The case is rather one where extrinsic facts show that blind and literal adherence to words will not discover the object intended by the testator and where the words actually employed by him are adequate, when read in the light of relevant circumstances, to express his real intent. (*Matter of Smith,* 254 N. Y. 283, 288, 289, *supra; Matter of Martin,* 255 N. Y. 248; *Matter of Blodgett,* 168 Misc. 898, 901.)

Where extrinsic evidence is admissible to identify the object of a gift, the declarations and conversation of a testator are competent. (4 Page on Wills, § 1625, p. 669; 9 Wigmore on Evidence, § 2472; *Matter of Hertzig,* 177 Misc. 598, *supra.*) The motion to strike out all extrinsic evidence is denied.

The beneficiary intended by decedent has no separate corporate existence. The legacy is payable to its corporate parent for the use and benefit of the subordinate branch and for the particular charitable use stated by the testator.

Submit decree on notice construing the will accordingly.