Harry G. Herman, S.
In this independent proceeding for a construction the court is asked to determine whether a provision in favor of “ descendants ” of children of the testator includes a child or children adopted by a descendant of the testator.
The testator died on December 26, 1934. His will dated December 8, 1924, and three codicils, the latest of which was executed on March 24,1930, were admitted to probate by a decree of this court dated March 6, 1935. The testator created a trust of the residuary estate measured by the lives of two named *221 grandchildren both of whom are still living. Surdna Foundation, Inc., a charitable corporation will receive 45% of the income of such trust in addition to 45% of the principal upon the termination of such trust. The remaining 55% of the income is payable among two living sons each of whom is to receive 9% of the income and five daughters each of whom is to receive 7% of the income. The remaining 2% of the income is payable among three children of a deceased son of the testator — one part to a named grandson and a one-half part to each of two named granddaughters. Upon the termination of the trust the balance of principal is payable to the persons receiving-income therefrom at its termination in the same proportions as they are then receiving income.
The testator provided against the death of any child or more remote descendants before him or before the termination of the trust in the following language: “If any of my children or grandchildren last above named shall die before me, or before the termination of the trust hereby created, then, in the event of each such death, upon his, her or their death, I direct the Trustees to pay the income which he, she or they would have received if living during the continuation of the trust, to the children of the person so dying who shall survive the person so dying, and the descendants then living of any child of the person so dying who shall have died before him or her leaving descendants, per stirpes and not per capita; and if any such last referred to grandchild or descendant so receiving the income, die before the termination of the trust, to pay during the continuation of the trust, the share of such income which he, she or they were receiving at the time of death, to his, her or their descendants, per stirpes and not per capita”. (Emphasis added.)
The above-quoted provisions are followed by a clause providing that in default of such descendants or upon death during the continuation of the trust there is to be added to the amount of such income to the shares of those participating in income the share which the first-mentioned child or grandchildren dying as aforesaid would have received if living.
In several places the will refers to two inter vivos trust agreements one of which was executed on December 30, 1921, and is measured by the lives of two named grandchildren of the grantor. As in the will, the trust indenture provides that 45% of the income is to be paid to the same charitable foundation named in the will, and the same percentage of principal is to be paid to the foundation at the termination of the trust. The remaining 55% of trust income and principal is given to eight *222 named children of the grantor and their descendants in varying proportions. A second trust agreement was executed by the testator as grantor on December 29, 1922, at a time when one of the grantor’s sons had died survived by three children. This trust is measured by the lives of two named grandchildren one of whom died in December, 1954. As in the first trust, 45% of the income is to be paid to the same charitable foundation, and upon the termination of such trust the principal in that percentage is to be paid to such foundation. The remaining 55% of income and upon the termination of the trust this percentage of principal is distributable in varying percentages to seven named children of the grantor and three named grandchildren, the issue of a deceased son who died prior to the execution of the trust agreement.
Both trust agreements were the subject of a construction proceeding in the Supreme Court for New York County. The proceeding was referred to a Referee to hear and report and evidence was adduced as to certain extrinsic facts in order to determine whether an adopted child of a daughter of the grantor and the children of said adopted child and certain children adopted by other descendants were entitled to share with descendants of the blood of the grantor. In that proceeding the attorneys for the adopted daughter and the special guardian appointed by the court for adopted children or descendants of an adopted child contended that adopted children and descendants of an adopted child were entitled to share with other children and more remote descendants of the grantor. The special guardian appointed for other minor descendants of the grantor sought a construction excluding adopted children from the class entitled to share as “ descendants ” under the respective trust agreements. The learned Referee reported that the settlor intended to include adopted children and that one child adopted by a daughter of the settlor during the lifetime of the settlor and her descendants, as well as the several children adopted thereafter by other descendants of the settlor, were entitled to share with natural descendants in the same degree, and this report was confirmed without opinion.
The only child adopted prior to the death of testator was adopted by a daughter of decedent. The order of adoption dated June 29, 1934, was made after the date of the last codicil on March 24,1930, but about six months prior to the decedent’s death in December, 1934, although such child was received from an adoption nursery about two months after birth on December 11, 1928, and thereafter resided with decedent’s said daughter and her husband with the knowledge of decedent. The adopted *223 children include a child adopted by a granddaughter of testator, two children adopted by a grandson of testator, three children adopted by another granddaughter of testator and five children, the issue of the child adopted by the daughter of testator, as aforesaid on June 29, 1934. No hearing had been granted dr requested in this court, and the matter had been submitted to this court upon the minutes of the hearings, the exhibits and briefs of all of the respective parties in the proceeding in the Supreme Court referred to above, and the reports of the special guardians.
Although the special guardian appointed by this court in behalf of blood descendants had requested that the issues be submitted on the record of the hearing held before the learned Referee, in his report he argued against the admissibility of certain of such evidence. In the hearing before the Referee the special guardian appointed in that proceeding for the descendants of the blood of testator also objected to certain items of evidence, and in the main, such objections were overruled by the Referee. Under these circumstances, this court by its decision dated May 19, 1964 (Matter of Andrus, N. Y. L. J., May 22, 1964, p. 19, col. 5), restored the proceeding to the calendar in order to determine the necessity, if any, for an independent hearing in this court and the necessity, if any, for rulings as to the admissibility of such of the items of evidence as to which objections were raised by the special guardian for blood descendants.
Upon the restoration of this proceeding to the calendar all of the parties waived any further hearing and the right to offer any additional evidence, and requested the court to rule upon the objections interposed by the special guardian for blood descendants to certain evidence admitted at the hearing before the Referee.
The special guardian thereafter filed a supplemental report objecting to the evidence adduced before the Referee almost in its entirety on the ground that the evidence related solely to the inter vivos trusts and not to the testamentary trust. The testimony of the witness, Helen Andrus Benedict, daughter of testator, was objected to as irrelevant in that the testimony had no direct application to the intent of testator at the time of the execution of the will but merely established the testator’s attitude towards adoptions generally. The testimony of Harold Gr. Cant, an attorney, was objected to as irrelevant on the ground that none of the testimony alluded to the circumstances or background of facts existing when the will was made. This witness testified to a conversation stated to have been had with the *224 decedent some time in 1931 to the effect that it was the intention of testator that the adopted daughter of his daughter Ida Williams should share equally with all other grandchildren. Mr. Cant at that time also represented Ida Williams and the purpose of Mr. Cant’s visit with the testator was to estimate the status of such adopted child, at least insofar as related to the inter vivos trust agreements.
The objections interposed by the special guardian for blood descendants are overruled and dismissed. The term “ descendants ” and such terms as issue, lawful issue and children may or may not include adopted children and when read alone and apart from context are ambiguous (Matter of Upjohn, 304 N. Y. 366, 375). Since the term “descendants” is ambiguous and may or may not include an adopted child the court may consider extrinsic evidence proper to be considered in order to discover the testator’s intention (Matter of Smith, 254 N. Y. 283, 289). Circumstances surrounding the testator at the time of the execution of his will may be given as evidence so that the court may see the facts as he saw them and thus arrive at his intention where the language alone is of doubtful import (see Morris v. Sickly, 133 N. Y. 456, 459). As stated therein, although the will is in a sense ambulatory as to the subjects with which it deals, it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which control the disposition of the property, so that circumstances occurring long after the execution of the will throw no light upon the meaning of the language used since these could not have been within contemplation of testator. Such intention and purpose must be found to exist at the time of the execution of the will and cannot be changed by after-occurring events (Morris v. Sickly, supra, p. 460). However, declarations of testator whether made before or after the execution of the will may be received in order to explain a latent ambiguity as where a person or thing is described in the will in terms equally applicable to two or more (Matter of Wheeler, 32 App. Div. 183, affd. 161 N. Y. 652; Matter of Lummis, 101 Misc. 258, 266).
In support of a construction favoring adopted children, it appears that the only direct statement by decedent relating to his intention was made early in 1931, when the testator in a conversation with an attorney for the adopting parent was stated to have said that it was his intention that the adopted child should share the same as all other children. Other evidence was adduced before the Referee in an effort to establish the settlor’s affection for, and deep interest in, children as reflecting *225 au attitude which favored the adoption of children. The above statement as to the settlor’s intention was stated to have been made many years after the execution of the trust indentures and approximately one year after the date of the latest codicil.
In Matter of Ricks (10 N Y 2d 231) the court determined that an adopted child was not included within the term " descendants ” as interpreted therein. The inter vivos trust there construed contained a provision for the disposition of net income upon the death of the grantor’s son during the life of the grantor’s granddaughter, to the descendants of the grandson per stirpes and not per capita, surviving from time to time as the income became payable. In determining that the two children adopted by the grandson some three years after the creation of the trust were not entitled to share as descendants, the court observed that the provision for distribution among descendants per stirpes and the absence of any extraneous facts indicating a contrary intention required the exclusion of adopted children as descendants. The court also held that apart from the rule as to declarations of intention the use of the grantor’s ex parte affidavit, made nearly 10 years after the execution of the trust agreement, received over objections, without insisting that the grantor testify and submit himself to cross-examination was improper, and, moreover, by its wording fell far short of any indication of an intention to designate the children as beneficiaries under the trust agreement.
In Matter of Rockefeller (12 N Y 2d 124) which involved the sufficiency of a pleading, the court affirmed the rule that if the settlor at the time he executed the deed of trust intended to include adopted children as issue entitled to take the remainder, the adoption motive was of no consequence, and that the intention of the settlor conditioned the operation of section 117 of the Domestic Relations Law. The court further stated that it was sufficient if it appeared from the context of the will or trust, and the extraneous facts which might be properly considered, that the grantor intended to include adopted children (citing New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11 and Matter of Upjohn, supra), and that adopted children were not required to establish that they specifically were contemplated as objects of affection and bounty by the testator (citing Matter of Charles, 304 N. Y. 776 and Matter of Ward, 9 A D 2d 950, affd. 9 N Y 2d 722).
None of the adult parties who would have been affected adversely has opposed a construction favoring the inclusion of adopted children or the descendants of an adopted child. The *226 testimony adduced tended to establish not only that the testator favored adoptions generally but also the approval by testator of the adoption of a child by one of his daughters.
There can be no doubt as to the testator’s affection for orphaned or destitute children and his deep and abiding interest in their welfare. The testator’s wife had been treated as an adopted child by a family named Dyckman, and during his lifetime the testator had incorporated and funded Surdna Foundation. One of its primary purposes was devoted to the Julia Dyckman Andrus Memorial, Inc., to provide a home for orphans or destitute children and for the care and housing of such children. A substantial portion of his worldly goods both by the inter vivos trust agreements and by his will were devoted to the purposes of such foundation. His deep interest in orphaned and destitute children is entirely consistent with a generally favorable attitude toward adoptions. And although .such a generous attitude would not necessarily be persuasive in determining the issues presented herein it is not likely that one who had devoted so much of his time and personal fortune to needy children would limit his benefaction to natural descendants so as to disinherit' an adopted child, or the kindred of an adopted child, of a descendant by blood.
Moreover, the provisions of the Avill as referable to the child of a deceased child or grandchild of testator and the descendants of a deceased child, as distinguished from descendants of testator, is a circumstance which is regarded as a not unfavorable indication of an intention to include adopted children or the kindred of an adopted child of a descendant as objects of his bounty. Heedless to say our own statutes have included an adopted child as a distributee of an adopting parent.
The recent trend in judicial decisions appears to have favored the placing of an adopted child on the same plane as natural children for the purpose of inheritance. The terms “issue” and “ descendants ” have been held to include adopted children upon extrinsic evidence indicating such an intention. Our Legislature, through the enactment of section 117 of the Domestic Relations Law, effective as of March 1,1964, permitted, as to persons dying on or after the effective date, the inheritance by an adopted'child through as Avell as from a foster parent. And the enactment of section 49 of the Decedent Estate Law also effective March 1, 1964, and applicable to persons dying on or after the effective date, in prescribing the rights of adopted children in the devolution of property by a written instrument, places an adopted child on the same plane as any natural child unless the instrument specifically provides to the contrary. *227 Declared public policy and the trend of judicial opinion have not regarded with disfavor the placing of adopted children on the same plane as natural children in the devolution of property.
The will is construed as including adopted children of any descendant of testator as well as the kindred of any child adopted by a descendant of testator within the class entitled to share in principal as such descendants within the purview of the will.