ESTATE of Anton L. TRUNK, Deceased.

Clara P. TRUNK, Executrix, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 167, Docket 76–4125.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1976.

Decided Feb. 2, 1977.

Jerome Kamerman, New York City, for petitioner-appellant.

William S. Estabrook, III, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jr. and Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before MANSFIELD, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This appeal illustrates, as have so many before, how closely trouble and expense follow upon poor draftsmanship of a will. Because the Tax Court has construed ambiguities in the testator's will differently than did appellant, an adjusted tax deficiency in the sum of $50,848.42 has been assessed against the testator's estate. However, because we conclude that the Tax Court did not give appellant full opportunity to attempt to eliminate the ambiguities, we vacate the judgment appealed from and order a new trial.

At the time Anton Trunk's will was executed, included among his assets were (1) an improved piece of leased real estate in Jamaica, New York with a net worth of approximately $237,000, (2) an undivided 50% interest in a Manhattan office building with a net worth of approximately $500,000, and (3) an installment contract, payable without interest, with a value somewhat in excess of $140,000. With these assets, Mr. Trunk created three separate trusts.

In Trust No. 1, he provided that his wife and four other named beneficiaries should receive stated portions of the annual net income from the Jamaica property during their lifetime, with the remainder upon their deaths to St. John's Episcopal Church of Larchmont. In Trust No. 2, he directed that his wife should receive quarter annual payments of his share of net income from the Manhattan property, such payments to be made to two other named individuals upon her death, and, upon their deaths, the principal to be conveyed to the Presbyterian Home for Aged Women in New York City. In Trust No. 3, where no interest payments were to be made, Mr. Trunk directed that his wife receive the annual net installments of principal, such payments to be made to other named individuals upon her death and, upon their deaths, to St. John's Church.

The principal matter in contention arises from the following provision in Trust No. 2:

In the event my Trustees shall certify in writing that it is requisite, necessary or desirable to borrow a sum of money, my said Trustees are hereby authorized and empowered to do so up to, but not in excess of, the sum of $200,000.00 and, for such purpose, to mortgage my aforesaid interest in the property constituting the corpus of this trust, and to make, issue and deliver such bond or note and mortgage and any other instruments as may be proper and necessary. Said sum so borrowed shall be turned over, in whole or in part, to my wife, Clara Poey Trunk, if so requested by her in writing and/or used, in whole or in part, to pay and discharge any Federal or New York State Estate or Inheritance Taxes, under any of the provisions of this, my Will.

Three years after Mr. Trunk's death, his widow requested the trustee [1] to turn over to her as her "elective bequest" the sum of $200,000, and the trustee did so. Thereafter, the widow, as executrix, included this amount as part of the marital deduction allowance under the will. The Commissioner disallowed this deduction, and the Tax Court has held with the Commissioner.

It is apparent from the proceedings before the Tax Court that reasonable persons might differ in their interpretation of the above quoted provision. It was the primary contention of the Commissioner that the bequest provided for therein was contingent, because, he said, the trustee might elect to use the $200,000 for payment of taxes instead of turning it over to decedent's widow. In the alternative, the Commissioner argued that the widow possessed only a restricted right to invade the corpus of the trust which would terminate at her death and that the bequest was therefore a terminable interest not qualifying for a marital deduction under 26 U.S.C. § 2056(b)(1). Appellant contended, on the other hand, that the bequest was neither contingent nor terminable, but was either an unencumbered elective bequest or a discretionary power of appointment of a portion of a life estate qualifying for a marital deduction under § 2056(b)(5).

The Tax Court rejected both arguments, concluding that the testator never intended to make any additional bequest of $200,000 to his wife. The Court held that, by the provision in question, Mr. Trunk was simply providing a source of funds to meet the liability for inheritance taxes or the bequests to his wife contained elsewhere in the will. In any event, the Court held that appellant had failed to establish that Mr. Trunk intended to give his widow the unqualified right to demand and receive an additional $200,000 under the will.

Although it is not our present purpose to construe the language in dispute, we conceive of the reasonable possibility that the testator might have intended by this provision to give his wife a life estate with an unrestricted power of appointment as to $200,000 of the corpus. *See, e. g., Allen v. United States,* 250 F.Supp. 155 (E.D.Mo. 1965). Assuming the Tax Court decided that this was the testator's intention, it might also decide that the acts required of the trustees were solely in the nature of administrative duties under Internal Revenue Code Regulation 20.2056(b)–5(f)(4), or limitations of a formal nature under Regulation 20.2056(b)–5(g)(4) and therefore did not affect deductibility under § 2056(b)(5) which carves out an exception to the terminal interest rule invoked by the Commissioner. Because the ambiguity in the trust provisions makes the foregoing interpretation not unreasonable, we think the Tax Court should have permitted appellant greater latitude than it did, in her attempt to establish that this was what the testator intended.

Petitioner called as a witness the scrivener of the will who testified that he was required to draw the will in the exact language of the decedent, although he himself would have used other language had he

---

1. Although two trustees were named in Trust No. 2, only one, the testator's attorney, qualified and is acting.

been permitted to do so.[2] She then offered to prove that, shortly following the execution of the will, the testator had told the attorney that he meant his widow to be entitled to the sum of $200,000 upon her request without regard to the wishes of the trustee and that she was to have a power of appointment to elect to take up to $200,000 from the principal of the trust. This testimony was rejected by the Tax Court. We think it should have been admitted.

■ Where the language of a will is ambiguous and susceptible of several constructions, "it is the court's duty to employ . . . every means at its disposal to ferret out and effectuate the actual intent of the testator." *In re Fabbri*, 2 N.Y.2d 236, 244, 159 N.Y.S.2d 184, 191, 140 N.E.2d 269, 274 (1957). Whether, and to what extent, the "means" at a court's disposal include the examination of extrinsic evidence, has long been a matter of uncertainty and dispute; and the older decisions illustrate a conservative reluctance to resort to such interpretative assistance. However, the modern view is considerably more liberal and "permits the introduction of extrinsic evidence whenever a legitimate question of construction arises from language of doubtful import in a will." *In re Hertzig*, 177 Misc. 598, 599, 31 N.Y.S.2d 415, 416 (Sur.Ct. N.Y.Co.1941); 3 Jessup Redfield, Surrogate's Law and Practice § 1862 (1949). While this rule has been applied most freely in cases involving latent ambiguities,[3] *see In re Goldstein*, 46 App.Div.2d 449, 363 N.Y. S.2d 147 (4th Dept. 1975), *aff'd on opinion below*, 38 N.Y.2d 876, 382 N.Y.S.2d 743, 346 N.E.2d 544 (1976), it has also been followed where ambiguity is patent on the face of the instrument. *In re Momand*, 7 A.D.2d 280, 182 N.Y.S.2d 565 (1st Dept. 1959); *In re Arrington*, 200 Misc. 72, 76, 104 N.Y.S.2d 55 (Sur.Ct.Queens Co.1951); *In re Billings*, 139 Misc. 496, 499, 249 N.Y.S. 732 (Sur.Ct.

Clinton Co.1931). Indeed, the distinction between latent and patent ambiguities has been held to be philosophically unjustified, *see In re Blodgett*, 168 Misc. 898, 901–02, 7 N.Y.S.2d 364 (Sup.Ct.1938); and the modern tendency is to recognize no difference between them insofar as the use of parol evidence is concerned. Richardson on Evidence § 604 (9th ed. 1964); 4 Page on Wills 32.7, at 259 (1961). The intent of a testator is not "a legal abstraction, or . . . the deduction most agreeable to trained legal minds"; it is "what the testator had in mind." *Baker v. National Savings & Trust Co.*, 86 U.S.App.D.C. 161, 181 F.2d 273, 274 (1950). Where extrinsic evidence is essential to an understanding of what a testator had in mind, it should be considered. *Estate of Tilyou v. Commissioner*, 470 F.2d 693, 697 (2d Cir. 1972); *In re Flyer*, 23 N.Y.2d 579, 584, 297 N.Y.S.2d 956, 245 N.E.2d 718 (1969).

It would seem that the most compelling evidence of a testator's intent would be his own statements concerning it. Yet, this is the type of extrinsic evidence which has been most often rejected, the theory being that its admission would accomplish the oral testamentary devolution of property and encourage fraud and perjury. However, even here, the tendency is towards greater liberality in admissibility, 7 Warren's Heaton, Surrogates' Courts § 30(1)(b) (1976), particularly in cases involving latent ambiguities. *See, e.g., Coulam v. Doull*, 133 U.S. 216, 231, 10 S.Ct. 253, 33 L.Ed. 596 (1890); *In re Coughlin*, 171 App.Div. 662, 664–65, 157 N.Y.S. 630 (2d Dept. 1916), *aff'd on opinion below*, 220 N.Y. 681, 116 N.E. 1041 (1917); *In re Andrus*, 44 Misc.2d 220, 224, 253 N.Y.S.2d 373 (Sur.Ct.Westchester Co. 1964); *In re Jolson*, 202 Misc. 907, 911, 114 N.Y.S.2d 135 (Sur.Ct.N.Y.Co.1952); 4 Page, *supra*, § 32.9; Atkinson, Handbook of the Law of Wills, 810 (1953); 7 Warren's Hea-

**2.** The fact that the testator himself chose the language should be borne in mind when it is construed. *In re Kavanagh*, 133 Misc. 399, 401, 232 N.Y.S. 308 (Sur.Ct.Bronx Co.1928).

**3.** "A patent ambiguity is one arising upon the face of the instrument without reference to the

described object while a latent ambiguity is one developed by extrinsic evidence, where the particular words, in themselves clear, apply equally well in two different objects." *University City, Mo. v. Home Fire & Marine Ins. Co.*, 114 F.2d 288, 295 (8th Cir. 1940).

ton, *supra*, § 30(1)(b). Although some state courts continue to reject testimony of this nature where the ambiguity is patent, *but see In re Blodgett, supra*, 168 Misc. at 902–04, 7 N.Y.S.2d 364; *In re Billings*, 140 Misc. 551, 555–56, 252 N.Y.S. 297 (Sur.Ct.Clinton Co.1961); *Wilson v. Flowers*, 58 N.J. 250, 277 A.2d 199 (1971), we see little justification, in a proceeding before the Tax Court, for applying different evidentiary rules to latent and patent ambiguities.[4] Proceedings before that Court are equitable in nature; and, because the Court is concerned with substance and realities rather than form, its search for the truth is not rigidly restricted to the contents of writings. *Helvering v. F. & R. Lazarus & Co.*, 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226 (1939); *Commissioner v. Penn Athletic Club Bldg.*, 176 F.2d 939, 943–44 (3d Cir. 1949); Harris, Federal Estate and Gift Taxes § 631 (2d ed. 1972).

■ We have held that "the days when wooden application of the parol evidence rule was allowed to produce results contrary to the parties' intention have long since passed", *Hellenic Lines, Ltd. v. United States*, 512 F.2d 1196, 1209 (2d Cir. 1975); and we have permitted declarations of intention to be considered in cases involving contractual interpretation. *Asheville Mica Co. v. Commodity Credit Corp.*, 335 F.2d 768, 771 (2d Cir. 1964). Whether declarations would be admitted in state court probate proceedings in order to resolve patent ambiguities is not determinative of the issue before us.[5] The Tax Court does not apply state rules of evidence. 26 U.S.C. § 7453; Tax Ct. Rule 143. Where, as here, the language of a will may be interpreted in several equally reasonable ways and the declarations of the testator neither add to, alter or compete with his written words, his declarations of intent should be admitted by the Tax Court in carrying out its equitable obligation to search out the truth. The weight to be given to this evidence is, of course, for that Court to determine.

Inasmuch as we are directing a new trial, we believe it would be helpful to the Tax Court to have the benefit of our thinking on the issue of tax apportionment, which has also been decided adversely to appellant. As has already been pointed out, the remainders of the three trusts set up in Mr. Trunk's will go to charities. New York Estates, Powers and Trust Law, § 2–1.8 provides in substance that, unless the testator otherwise directs, the tax on his estate shall be equitably apportioned among the persons interested in the gross estate in accordance with the provisions of the section. In making this apportionment, any exemption or deduction allowed because of the charitable purposes of a gift enures to the recipient of the gift unless the will provides otherwise. Section 2–1.8(c)(2). The amount of the charitable exemption in the instant case is based on the value of the corpus of each trust in which the charities have a residuary interest. For this reason, it is important to determine whether estate taxes are chargeable against the corpus, because, if they are, the amount of the charitable exemption would be thereby reduced.

Subdivision (b) of § 2–1.8 provides in substance that, when a legatee is given an interest in income or a life estate, the tax apportionable against such temporary interest and the remainder limited thereon is payable out of the principal without appor-

---

**4.** The distinction between ambiguities which are patent and those which are latent is often far from clear. For example, while ambiguity arising out of a phrase such as "personal property" is generally held to be latent, *In re Billings, supra*, 139 Misc. at 499, 249 N.Y.S. 732, the variety of meanings which have been attributed to this phrase in constantly recurring construction proceedings would support an argument that it is ambiguous on its face. Many courts simply ignore the latent-patent dichotomy when construing troublesome ambiguities.

*See, e.g., In re Morrison*, 270 App.Div. 318, 320, 60 N.Y.S.2d 18 (3d Dept. 1946).

**5.** Although the proceedings in the New York Surrogates Court are not binding upon the United States which was not a party, *Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), it is of interest to note that the construction urged upon the Tax Court by appellant has already been agreed to by all of the parties in the New York probate accounting.

tionment between the temporary interest and the remainder, unless the will provides otherwise. The apportionment provisions of § 2–1.8 are to be carried out "unless there is a clearly expressed intention to the contrary in the will." *In re Pepper*, 307 N.Y. 242, 246, 120 N.E.2d 807, 809 (1954).

Trusts No. 1 and No. 2 contain identical provisions directing the trustees to collect and pay income as follows:

> To the payment and discharge of any and all liabilities and obligations arising out of or connected with the operation and maintenance of the trust property including, but not limited to, the payment of interest and amortization of mortgages, the discharge and satisfaction of mortgages, the payment of taxes and water charges, if any, as well as the payment of administration, legal expenses and Federal and State Estate Taxes and Income Taxes.

The Tax Court found no clear expression of intent in these provisions that the estate tax chargeable against these trusts should not be payable out of principal as provided for by subdivision (b). The Court stated that the language used refers to the "source of the funds" and was not intended to negate the statutory rule of apportionment. We are unable to make this same fine distinction.

Trust No. 1 consists of a parcel of real estate. The trustees are prohibited from increasing the mortgage indebtedness on the property except for its maintenance or improvement and are forbidden from selling it so long as the tenant, First National City Bank, its successor, or a bank of similar repute, continues as lessee. Unless the property is sold, a rather remote contingency it would appear, it is not at all clear how the "source" is to be replenished from the trust corpus.

Although Trust No. 2 permits the trustees, at appellant's written request, to mortgage the trust res for up to $200,000, if this provision is construed as appellant would have it, this money has already been preempted for her own personal use.

In Trust No. 1, testator provided that payment to the life beneficiaries is to be made out of the "remaining net income" after payment of taxes, etc., and in Trust No. 2 it is to be paid out of "net income". The reasonable interpretation of these provisions is that income is to be applied first to the payment of administrative expenses and taxes and only the net income thereafter remaining is to be paid to the life beneficiaries. We conclude, therefore, that it was the testator's "clearly expressed intention" that taxes on these two trust estates be paid out of the trust income.[6]

The parties have not briefed or argued the question of possible illegal accumulation of income proscribed by § 9–2.1 of the Estates, Powers and Trust Law, which was not passed upon by the Tax Court. Accordingly, we leave that issue to be explored and determined on the retrial.

We remand the case to the Tax Court with directions to grant petitioner a new trial.

---

6. The problem of apportionment has not arisen in Trust No. 3 because all payments in that trust are from principal.